**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| GINA PIKE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 4:17-cv-772 |
| | ) | |
| HARTFORD LIFE AND | ) | |
| ACCIDENT INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

**DEFENDANT HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY'S**
**<u>OBJECTION TO REPORT AND RECOMMENDATION</u>**

Jodi W. Dishman
Lead Attorney
Texas State Bar No.: 24062700
Oklahoma State Bar No.: 20677
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
E-mail: jodi.dishman@mcafeetaft.com

and

Anna E. Imose
Oklahoma State Bar No.: 32021
McAfee & Taft A Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, OK 74103
Telephone: (918) 587-0000
Facsimile: (918) 574-3031
E-mail: anna.imose@mcafeetaft.com

**COUNSEL FOR DEFENDANT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

OBJECTIONS ..........................................................................................................................2

   I.   The R&R fails to follow long-standing ERISA principles and the plan language which leads to erroneous findings of fact and legal conclusions...................................................2

       *a.   The R&R errs in applying the treating physician rule and giving deference to Pike's treating physician over independent reviewing physicians* .........................2

       *b.   The R&R improperly relies on outdated records for its conclusion on present disability*...................................................................................................................6

       *c.   The R&R wrongly relies on subjective complaints by the Plaintiff as opposed to objective evidence* ...................................................................................................12

       *d.   The R&R errs in misstating the Plan's definition of "disability."* ........................14

       *e.   The R&R erroneously uses Pike's attorney's arguments in briefing as findings but these are not supported by the AR and are contrary to the law* ...........................15

       *f.   The R&R cherry-picks from the AR instead of reconciling the evidence as the plan administrator must do in its benefits decision* ...................................................18

   II.   The R&R relies on law outside this Circuit that is contrary to the way the Fifth Circuit will decide these issues ....................................................................................................20

   III.  The R&R purports to award Plaintiff attorney's fees without any motion practice and based on erroneous factual and legal conclusion...........................................................22

CONCLUSION........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abiona v. Thompson*,
  237 F. Supp. 2d 258 (E.D.N.Y. 2002) ...................................................................12

*Anderson v. Cytec Indus., Inc.*,
  619 F.3d 505 (5th Cir. 2010) ........................................................................5, 21

*Ariana M. v. Humana Health Plan of Texas, Inc.*,
  No. H-14-3206, 2018 WL 4384162 (S.D. Tex. Sept. 14, 2018) (appeal filed) .............. *passim*

*Audino v. Raytheon Company Short Term Disability Plan*,
  129 F. App'x 882 (5th Cir. 2005) (unpublished) ...................................................14

*Black & Decker Disability Plan v. Nord*,
  538 U.S. 822 (2003) .................................................................................. *passim*

*Corry v. Liberty Life Assur. Co. of Boston*,
  499 F.3d 389 (5th Cir. 2007) ................................................................13, 22, 24

*Crider v. Highmark Life Ins. Co.*,
  458 F. Supp. 2d 487 (W.D. Mich. 2006) .............................................................18

*Ellis v. Liberty Life Assur. of Boston*,
  394 F.3d 262 (5th Cir. 2004) ...........................................................................11

*Hans v. Unum Life Ins. Co.*,
  No. CV 14-02760-AB, 2015 WL 5838462 (C.D. Cal. Oct. 5, 2015) .....................................20

*Hilton v. Ashland Oil Inc.*,
  103 F.3d 124 (5th Cir. 1996) (unpublished) ................................................8, 9, 22

*Hines v. Unum Life Ins. Co. of America*,
  2018 WL 6599404 (N.D. Ohio Dec. 17, 2018) ........................................................22

*Holden v. Blue Cross & Blue Shield of Tex., Inc.*,
  No. H-07-2008, 2008 WL 4525403 (S.D. Tex. Sept. 30, 2018)............................................20

*Iron Workers Local No. 272 v. Bowen*,
  624 F.2d 1255 (5th Cir. 1980) .........................................................................22

*Mazur v. Hartford Life & Acc. Co.*,
  No. CIV.A 06-01045, 2007 WL 4233400 (W.D. Pa. Nov. 28, 2007) ...............................11, 12

*Metropolitan Life Ins. Co. v. Glenn*,
    554 U.S. 105 (2008).............................................................................................23

*Reetz v. Hartford Life & Accident Insurance Co.*,
    294 F. Supp. 3d 1068 (W.D. Wash. 2018)..............................................................21

*Regula v. Delta Family Care Disability Survivorship Plan*,
    266 F.3d 1130 (9th Cir. 2001), *cert. granted*, *judgment vacated*, 539 U.S. 901
    (2003)......................................................................................................................21

*Schexnayder v. Hartford Life & Accid. Ins. Co.*,
    600 F.3d 465 (5th Cir. 2000) .................................................................................23

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013)...................................................................................................6

*Vercher v. Alexander & Alexander, Inc.*,
    379 F.3d 222 (5th Cir. 2004) ............................................................................3, 21

*Wilkins v. Baptist Healthcare Sys., Inc.*,
    150 F.3d 609 (6th Cir. 1998) ...........................................................................13, 16

**Statutes**

29 U.S.C. § 1132(g)(1) ...............................................................................................22

**Other Authorities**

29 C.F.R. § 2560.503-1.................................................................................................6

Fed. R. Evid. 401 .........................................................................................................7

Hartford Life and Accident Insurance Company ("Hartford") respectfully objects to the Report and Recommendation ("R&R") filed in this matter on January 31, 2019 (Doc. 33), which erroneously finds that Hartford improperly ceased payment of Plaintiff Gina Pike's long-term disability ERISA claim.[1] Under this Court's *de novo* review and for all of the reasons stated here and in its underlying briefing (Docs. 25, 26, 29), Hartford asks the Court to reject the R&R and issue an Order granting judgment in favor of Hartford.

### *Preliminary Statement*

The erroneous factual findings in the R&R lead to the application of the wrong law, which in turn leads to a R&R that is contrary to the law of the Supreme Court, the Fifth Circuit, and district courts within the Fifth Circuit. Under *de novo* review, no deference is afforded to the administrator's ERISA disability termination decision. But the court must weigh the evidence in the administrative record ("AR") governed by what the administrator is required to do (or not do) under the law in analyzing whether the claimant has met her burden of proving disability under the plan. *See Ariana M. v. Humana Health Plan of Texas, Inc.*, No. H-14-3206, 2018 WL 4384162, at *12 (S.D. Tex. Sept. 14, 2018) (appeal filed) ("*De novo* review requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms."). Stated another way, nothing about *de novo* review changes the long-standing legal principles for administration of an ERISA claim under the terms of the plan.

The R&R fails to follow long-standing ERISA principles and fails to apply the terms of the plan. Instead, it purports to turn long-standing ERISA law and the plan language on their head by, for example, applying the treating physician rule and giving deference to Pike's treating physician, relying on outdated records to find present disability, elevating subjective complaints

---

[1] No party consented to a U.S. Magistrate Judge. JSR, Doc. 9.

by Pike over objective medical evidence, conflating a diagnosis of chronic pain or back condition with "disabling" under the plan, adopting Pike's counsel's arguments as fact, and cherry-picking from the AR to reach its recommendation, instead of reconciling evidence as an administrator like Hartford must do in its benefits determination. These factual and legal errors lead the R&R to look to a district court case within the Ninth Circuit that does not represent how the Fifth Circuit views these issues. Finally, without a motion or briefing, the R&R issues erroneous findings of fact to recommend an award of attorney's fees and costs to Pike, while applying the wrong law and reaching the wrong conclusions.

## **OBJECTIONS**

I.    **The R&R fails to follow long-standing ERISA principles and the plan language which leads to erroneous findings of fact and legal conclusions.**

a.    *The R&R errs in applying the treating physician rule and giving deference to Pike's treating physician over independent reviewing physicians.*

The R&R commits error by giving the treating physicians more weight because of their in-person observation of "the effect of [Pike's] chronic pain [and ability to] assess[] her credibility."  R&R pp. 50-51 ("First, [the appeal independent medical review ("IMR")] Dr. Lewis did not examine Plaintiff in person. . . . Here, the treating physicians' relationships with Plaintiff allowed them to personally observe the effects of Plaintiff's diagnoses and assess the credibility of her reports of pain.").  The R&R finds the treating physicians "more reliable and probative" because of their long-standing relationships with Pike and their personal observations of Pike.  *Id.* p. 51.  This is erroneous under governing case law in this Circuit and under the plain language of the Plan.

Nothing about *de novo* review changes precedent on the treating physician rule, which states that in an ERISA case, the court is not to apply the treating physician rule applicable in

Social Security cases, where the opinion of a treating physician is entitled to more weight than that of non-treaters.  In *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003), the Supreme Court concluded that ERISA does not require deference to the treating physician.  The Court explained:

> Nothing in the Act itself . . . suggests that plan administrators must accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion.

*Id*. at 831. This is consistent with the Department of Labor (DOL), which is the agency with authority to regulate ERISA. *Id.* Nowhere in the detailed regulations governing ERISA disability benefit claims is there a treating physician rule. *See id.* (citing 29 C.F.R. § 2560.503-1). Indeed, the DOL expressly opposed the treating physician rule in its *amicus* brief filed in *Nord* in support of the plan. *See id.* at 830 (explaining the DOL argued the Ninth Circuit "erred in equating the two [statutory regimes]" of ERISA and SSA).  Moreover, the Fifth Circuit follows *Nord* and recognizes that "ERISA does not require plan administrators to accord special deference to opinions of treating physicians." *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 233 (5th Cir. 2004).

The no-deference-to-the-treater rule for plan administrators has not changed under *de novo* review.  In *Ariana M.*, on remand to the Southern District of Texas, the district court recognized on *de novo* review that "[p]recedent forecloses th[e] argument" that treating physicians' opinions are owed greater deference than the reviewing physicians.  2018 WL 4384162, at *16 (citing *Nord*, 538 U.S. at 834, and *Vercher*, 379 F.3d at 233).  In fact, the rationale in *Nord* reveals that the no-treating-physician rule in ERISA cases does not turn on standards of review. 538 U.S. at 832 ("And if a consultant engaged by a plan may have an 'incentive' to make a finding of 'not disabled,' so a treating physician, in a close case, may favor

a finding of 'disabled.'"); *id.* at 834 (courts have no warrant to require administrators to accord special weight to treaters or to impose burdens of explanation when administrators credit conflicting evidence). In sum, the case law is contrary to the R&R's finding that it can give more weight to a treating physician's conclusions in *de novo* review.  To the contrary, the Court must still look at this in the same way that the administrator is required to look at the evidence in the AR, which provides no deference to the treating physician.

The district court in *Ariana M.* also rejected on *de novo* review the corollary finding the R&R makes here, that observation and ability to account for subjective symptoms such as "her reports of pain" make the treating physician more reliable and probative than the IMR Dr. Lewis. R&R p. 51.  The *Ariana M.* district court found that Humana hired board-certified physicians to review her subjective symptoms, that the independent reviewers spoke with Ariana M.'s attending physicians to hear their observations and opinions, and that the independent reviewers then made independent decisions.  *Ariana M.*, 2018 WL 4384162, at *16.  Ultimately, the independent reviewers agreed on certain facts but differed in their conclusions.  *Id.*

That is what the IMR Dr. Lewis did here: Dr. Lewis reviewed Pike's medical records and other evidence, including a review of her subjective symptoms (AR 1343, 1348-1350); he spoke with one of her treating physicians and attempted to speak with another (AR 1348); and he made an independent decision based on his review (AR 1342-1351).  He acknowledged Pike's "multiple surgeries" and took into account the "chronic nature of her symptoms."  AR 1349.  He also considered her subjective complaints and their claimed impact on her abilities.  AR 1348. But in his review of the diagnostic studies and objective medical evidence—which included records of Pike's other treating physicians, Dr. Park and Dr. Sanghvi, both of whom indicated there were no specific activity limitations or restrictions on Pike (AR 1347-48; AR 1-7; AR

4

1352;[2] AR 1564), and included a review of her medical history and any objective testing related to her back condition—he found "no neurological deficit[]" and "no objective findings that would prevent her ability for sustainable work 40 hours per week."  AR 1350.  Dr. Lewis also reached out to Dr. Gajraj and Dr. Sanghvi to discuss their recommendations on restrictions and limitations.  AR 1348, 1351-53.  Dr. Sanghvi responded, advising that her scope of treatment would not result in any restrictions or limitations for Pike but that Dr. Gajraj should be consulted for any limitations due to pain.  AR 1352. Dr. Lewis tried to do just that—leaving detailed messages for Dr. Gajraj—but never received any response. AR 1348.[3]

The district court in *Ariana M.* also rejected the finding the R&R reached here—that failure of medical reviewers to personally examine the claimant calls their evaluations into question.  2018 WL 4384162, at *13 n.8.  *See* R&R p. 51 ("Dr. Lewis, because he did not personally examine Plaintiff, could not have observed the effect of Plaintiff's chronic pain or assessed her credibility."). This finding is contrary to Fifth Circuit law and should be rejected. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 515 (5th Cir. 2010) ("That the independent experts reviewed Anderson's records but did not examine him personally also does not invalidate or call into question their conclusions.").

Not only are the R&R's findings and conclusions regarding the reliability, probative value, and credibility of the treater physicians over independent medical reviewers contradicted

---

[2] Dr. Sanghvi saw Pike in October 2016 to get her established as a patient. AR 1352. Pike had not had a primary care doctor since 2012. AR 6.

[3] A plan administrator should not be penalized when a treating physician ignores calls by IMRs to discuss restrictions and limitations or where the IMR is attempting to reconcile subjective and objective medical evidence.  The R&R's findings in this case have the impact of rewarding a treating physician who engaged in this conduct, which is contrary to the policy behind the administrative process and the goal of the administrator to reconcile medical evidence and make determinations under the plan in the administrative review process.  Time and time again, Hartford or independent physician reviewers attempted to reach Dr. Gajraj to discuss the objective evidence and he never returned phone calls or made himself available for discussion.

5

by case law, these R&R findings are improper based on the plain language of the Plan. *See US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) ("The plan, in short, is at the center of ERISA").[4]

The Plan does not require a physical examination or in-person consultation; it requires only that Hartford consult with a medical professional having the appropriate training and experience (neither of which is challenged in this case). The Plan states that "[w]hen deciding an appeal that is based in whole or part on medical judgment, we will consult with a medical professional having the appropriate training and experience in the field of medicine involved in the medical judgment and who is neither an individual consulted in connection with the initial benefit decision, nor a subordinate of such individual."  Doc. 17-1 at 34 of 37. Hartford also faces time limitations for reaching a decision on appeal.  *Id.*  The requirements in the Plan are in accordance with ERISA regulations.  *See* 29 CFR § 2560.503-1.  It is therefore improper for the R&R to give the treating physician more weight when the Plan language allows Hartford to seek an expert of its choosing with the appropriate qualifications for consultation in the Plan's consideration of Pike's claim.

The R&R findings of fact and law on Pike's treating physician are the lynchpin of the Magistrate Judge's recommendation that Pike meets the Plan definition of "disability."  *See* R&R p. 53 ("in determining whether Plaintiff is capable of performing the essential duties of any occupation, the Court accords significant weight to the evaluation of Plaintiff by her treating physicians . . . .").  Without these erroneous findings, the recommendations in the R&R fail.

      b.    *The R&R improperly relies on outdated records for its conclusion on present disability.*

---

[4] "The Policy alone is the only contract under which payment will be made."  Doc. No. 17-1, at 13 of 37.  "The Policy is incorporated into, and forms part of, the Plan."  Doc. No. 17-1, at 31 of 37.

The R&R repeatedly relies upon outdated records for its conclusion that "[Pike's] functional impairments persisted beyond December 14, 2016." *See, e.g.*, R&R p. 39 (citing AR from 2008, 2009, 2011); *id.* p. 37 (reciting the "relevant evidence" as "severe back pain since at least 2002"; her pursuant of "aggressive surgical treatment" in 2008).[5] The R&R also repeatedly relies upon Hartford's notations of outdated records for its findings that Pike is currently unable to work on a full time basis. *See, e.g.*, *id.* pp. 10, 13, 14 (citing AR 949, 935, 922, 921); *id.* at 39 ("Hartford previously determined Plaintiff could not perform the essential duties of any occupation after the definition of 'disabled' changed on April 29, 2010."); *id.* p. 40 ("Hartford paid LTD benefits under the more restrictive definition of 'disabled' for over six years . . . ."); *id.* p. 41 ("On July 17, 2015, Hartford determined it was unreasonable to expect Plaintiff to return to full time gainful employment . . . .").

The first and fatal problem with the R&R's use and analysis of outdated records to prove disability is that it shifts the burden of proof. Although the R&R pays lip service to the burden of proof (R&R pp. 35-36), its findings impermissibly shift the burden of proof to Hartford to show that Pike is no longer disabled: "The Court, having considered all of the evidence relied upon by Hartford *in justifying its termination of benefits*, finds no evidence of improvement in Plaintiff's condition *since Hartford previously found she was unable to sustain full time work in any occupation*." R&R p. 55 (emphasis added); *see also id.* pp. 39-40 ("Hartford previously determined Plaintiff could not perform the essential duties of any occupation after the definition of 'disabled' changed on April 29, 2010. . . . Here, Hartford paid LTD benefits under the more

---

[5] It is unclear how these outdated records could support a finding that Pike's "functional impairments persisted beyond December 14, 2016." R&R p. 39 (citing AR 1925, 955, 956, 963-64, 2215-2218, 922). Pike was not on her current medication regimen at the time of any of these records. *See* AR 39 (10/7/2011 "CHANGE Pain medication . . . to get better pain control for more functionality"). *See* Fed. R. Evid. 401.

restrictive definition of 'disabled' for over six years, until December 14, 2016; thus, the Court would expect to see evidence of improvement in the record."). The R&R concludes that "it was improper for Hartford to cease Plaintiff's LTD benefits." *Id.* p. 55.[6]

Under the R&R's rationale and findings, once disabled and once benefits have been paid, an administrator cannot cease payments *unless it can show that the claimant has improved*. This is contrary to what the Fifth Circuit has said about the burden of proof on disability claims under the "any occupation" standard. *Hilton v. Ashland Oil Inc.*, 103 F.3d 124 (5th Cir. 1996) (unpublished) (abuse of discretion standard of review).

The Fifth Circuit recognizes that it is impermissible to reverse the burden of proof to the ERISA administrator. In *Hilton*, Prudential attempted to obtain specific information from the plaintiff's treaters but they did not answer the questions presented by Prudential. *Id.* at *4 ("Significantly, the claims administrator received no additional information from that physician or from Hilton."). Although the Fifth Circuit acknowledged the district court's "talismanic recitation" regarding the burden of proof, the lower court had "in actuality . . . shifted the burden of proof from Hilton to the plan administrator." *Id.* at *6. By finding "that the evidence available to the Plan administrator is insufficient to support a finding that Hilton was not disabled", the district court improperly shifted the burden to the administrator to find sufficient evidence to eschew disability. *Id. Compare* R&R pp. 39-40, 55.

What the R&R does in this case is impermissible under Fifth Circuit standards:

> It was not the plan administrator's burden to find sufficient evidence to eschew disability; rather, it was Hilton's burden to submit sufficient satisfactory medical evidence to establish that he *was* disabled. By requiring the claimant to collect and submit evidence that he is so severely disabled that he cannot perform the

---

[6] To the extent the R&R's findings attempt to impose a "heightened" burden of explanation on Hartford's independent reviewing physicians, when they rejected Pike's treating physician's Dr. Gajraj's opinion, such an attempt is improper under *Nord*, 538 U.S. at 831.

> duties of any occupation, a presumption of ability (i.e., a presumption against disability) clearly exists.  We reiterate for emphasis that it is not incumbent on the plan administrator to make a 'finding' that Hilton was 'not disabled'; rather, it is incumbent on Hilton to adduce positively probative evidence sufficient to support a finding that he *was* disabled.

103 F.3d 124, at *6.   By finding that "it would expect to see an improvement" given Hartford's prior payment, by finding no "justif[ication] [for] [Hartford's] termination of benefits" given it previously found disability, and by finding that it "would expect to see evidence of improvement in the record", the R&R impermissibly shifted the burden of proof to Hartford.  This error infects the R&R and requires this Court's full reconsideration on *de novo* review.

The other problem with the R&R's findings and analysis focusing on the outdated medical records, outdated notations by Hartford in the claims notes, and the outdated offers of settlement and payments is that those records, notations, offers, and payments are not "positively probative evidence" that Pike is *currently* disabled. Put simply, past records do not serve to prove present disability.  The old records are simply comparison points of where Pike has been to where she is currently, not evidence of present disability which is what the Plan requires.[7]

The R&R relies heavily on Pike's outdated medical records as relevant evidence for its finding Pike has a present-day disability under the Plan but fails to address notable changes in her current medical records. For example, the R&R emphasizes that Dr. Martin, the neurosurgeon that performed Pike's extreme interbody fusion at L3-4, provided limitations in July 2008 that he opined were permanent. R&R at p. 37 (citing AR 1925). However, Dr. Martin last saw Pike in September 2008. AR 782. The IME was conducted in September 2016. It follows that limitations based on an October 2016 physical examination of Pike better reflect

---

[7] The R&R repeatedly looks to AR 913-14, which is a Hartford claims notation on July 24, 2015, that when read in context, is based entirely on Pike's self-reporting to Hartford, and that precedes Hartford's receipt of updated medical records from Dr. Gajraj in June 2016. AR 1740-49.

Pike's present day functionality. *Compare* Dr. Martin's limitations at AR 1925 (sit for no more than two hours in a day, stand for no more than two hours per day, and walk for no more than two hours per day), *with* the IME's limitations at AR 1530 (sit up to six hours a day, stand up to two hours a day, walk up to two hours a day).

Similarly, the R&R leans heavily on outdated notations in the claims notes by Hartford at the time of Hartford's previous determinations that Pike met the definition of "disability" under the Plan earlier in the administration of the claim.  *See, e.g.*, R&R p. 12 (quoting AR 941, a notation dated April 22, 2010); *id.* p. 14 (quoting AR 926, a notation dated February 20, 2011); *id.* p. 14 (citing AR 922, a notation dated June 4, 2011); *id.* p. 15 (citing AR 912, a notation dated July 17, 2015); *id.* pp. 15-16 (citing AR 913-14, a notation dated July 24, 2015); *id.* p. 16 (citing AR 909, notation dated April 22, 2016).   The R&R uses these records as "relevant evidence" to conclude Pike has met her present-day burden of disability and later uses these records to justify an award of attorney's fees for Pike.  *See id.* p. 41 (relying on AR 913-14 notation dated July 24, 2015).

The R&R fails to acknowledge, however, that its reliance on these outdated notations is undercut by the AR itself.  All of these outdated notations occur *before* Hartford obtained Pike's updated medical records from Dr. Gajraj for six office visits between February 17, 2015, and May 6, 2016.  *See* R&R p. 18 (finding Hartford received these records in June 2016) (citing AR 1740-49).   These treating physician records opine that Pike is taking her "medication as prescribed without significant side-effects and is gaining benefit in terms of analgesia and increased function."  AR 1742-46, 1749. The most recent May 6, 2016 record further states that Pike "is doing well overall" and "[h]er current medications are effective." AR 1742 (Pike is "alert, oriented," "[g]ood remote memory[,] [a]dequate attention span and able to concentrate").

10

Despite finding that Hartford did not obtain these 2015 and 2016 treating physician records until June 2016 (R&R p. 18 (citing AR 1740-49)), the R&R inexplicably concludes that claims notations from before Hartford obtained the updated Dr. Gajraj records are relevant to present-day disability. But the 2015 and 2016 records clearly provided Hartford with more recent information on which to base its decision—information Hartford simply did not have and could not have considered at the time of those earlier notations.  Moreover, these outdated notations in the claims notes in the AR rely on Pike's subjective reporting, not on objective medical determinations. Proper claims administration says that the administrator should record what the claimant is stating and reporting to the Plan on her claim; but notations of subjective statements by Pike to Hartford does not mean there is "disability" under the Plan.

Additionally, Hartford is not aware of a single federal case using outdated claims notations (including outdated lump sum settlement offers or assessments of claims administrators leading up to making a settlement offer) to find present-day disability or to impugn motive to the administrator (which the R&R does on attorney's fees, see R&R p. 58).  The R&R cites to no cases in its findings.  All of the case law Hartford found and addressed in its brief states that lump sum settlement offers or prior payments are irrelevant to a disability claim.  *See* Doc. 26 at 19-20 (citing *Reagan v. First UNUM Life Ins. Co.*, 39 F. Supp. 2d 1121, 1125 (C.D. Ill. 1999) (concluding that lump sum decision-making and offers are not admissible to prove liability for the claim and are irrelevant to current disability); *Mazur v. Hartford Life & Acc. Co.*, No. CIV.A 06-01045, 2007 WL 4233400, at *15 (W.D. Pa. Nov. 28, 2007) (failing to consider lump sum offers as either evidence of disability or evidence of motive behind benefits termination); *cf. Ellis v. Liberty Life Assur. of Boston*, 394 F.3d 262, 273-74 (5th Cir. 2004) (the administrator has no heightened level of review for determination of present entitlement to benefits based on prior

entitlement and payment).  Stated another way, these outdated records do not prove Pike is currently disabled.

The R&R fails to address the cases cited by Hartford on the irrelevancy of prior payments or settlement offers or outdated records.  Hartford respectfully submits that its cited cases have the correct view, and that the Court should reject the R&R's findings and conclusions on the outdated records.

        c.     *The R&R wrongly relies on subjective complaints by the Plaintiff as opposed to objective evidence.*

The R&R heavily relies upon Pike's subjective complaints.  For example, the R&R erroneously concludes that "[treating pain management physician] Dr. Gajraj's comments that Plaintiff was 'gaining benefit in terms of analgesia and increased function'" is not compelling because Pike still had subjective complaints of pain.  *Id.* p. 43.[8] And the R&R faults Hartford for not factoring in her cognition and ignoring her statements about cognitive impact (*id.* p. 43-44), even though Hartford considered all of the medical and other evidence.[9]  *See* AR 973-78, AR 985-92.

The AR shows that all of this was factored in by Hartford in its benefits determination. As a threshold matter, Hartford noted that Pike's lengthy and detailed letters and completed questionnaires undermined her complaints of cognitive impairment. AR 1302. The R&R quotes

---

    [8] "'Analgesia' simply means relief of pain." *Abiona v. Thompson*, 237 F. Supp. 2d 258, 262 n.1 (E.D.N.Y. 2002).

    [9] The R&R relies heavily on the impact of narcotics on Pike but does so based on old records. R&R pp. 40-41 (citing AR 912-14, 922). At the time of the records cited, Pike was on a completely different medication regimen.  *See* AR 39 (10/7/2011 "CHANGE Pain medication . . . to get better pain control for more functionality"); *compare* R&R p. 13 (citing AR 935 for finding that "medications did little to alleviate her pain", with a notation from November 2, 2010, which states, as it pertains to medications, that "[Dr. Bernstein] has jus[t] been switching the medications to see what works best" and at the time her medications were hydrocodone, Sentanyl patch, Vivelle patch, Sexosenadine, Fluticasone Propionate, Voltaren Gel).

heavily from Pike's detailed writings, but does not address how they contradict Pike's position that she was incapable of performing detailed tasks.  R&R at p. 45 (citing AR 1787, portion of July 13, 2015 completed questionnaire). Additionally, the records of all three treating physicians, Drs. Gajraj, Park, and Sanghvi, were evaluated and considered, and they were contacted by Hartford or the IME or IMR.  *See, e.g.*, AR 1564, 1348, 1352. The IME and IMR took all available evidence and documentation into account in evaluating whether Pike had any restrictions and limitations, including her subjective complaints of pain and her subjective complaints concerning her medications.  AR 1342-43, 1348 (IMR Dr. Lewis); AR 1528-30 (IME Dr. Sklar). They concluded that the objective medical evidence was stronger and more probative than the subjective complaints, something that the Fifth Circuit has previously acknowledged is appropriate for an administrator.  *See* AR 1528-30; AR 1342-50. *Cf. Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389, 400-403 (5th Cir. 2007) (finding no abuse of discretion where administrator concludes that objective medical evidence outweighs subjective complaints).  But her subjective complaints were repeatedly acknowledged by Hartford throughout the claim.

Nothing about *de novo* review changes the fact that an administrator—and a court on *de novo* review—must be able to evaluate not only subjective statements by the claimant seeking benefits but also what the objective evidence shows.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 614 (6th Cir. 1998) (on *de novo* review, lack of objective evidence showing the basis for the subjective complaints of pain by the claimant). *De novo* review does not mean the administrator must take as the final word on "disability" under the plan a claimant's subjective statements on her restrictions and limitations. If the objective evidence on restrictions and limitations is heavier than the subjective evidence, as it is here, then nothing about *de novo* review should prevent an administrator from making the determination that "disabled" is not met

under the plan based on the evidence as a whole. *See* AR 973-78, 985-92.  Hartford's analysis as

the administrator followed exactly what courts have said administrators are to do with subjective

and objective evidence.  *See id.*  The R&R's findings otherwise are erroneous.[10]

> d.      *The R&R errs in misstating the Plan's definition of "disability."*

The R&R makes findings that imply a diagnosis is the same as "disability."   By

repeatedly noting each time a treater diagnosed Pike, the R&R frames the dispute as whether

Pike has been diagnosed with various back conditions or chronic pain, not whether those back

conditions or pain continue to result in disabling symptoms.  *See, e.g.*, R&R p. 37 (Plaintiff has

suffered from severe back pain since 2002); *id.* p. 44 (noting "Plaintiff's condition, her pain, and

the side effects from her medications"); *id.* p. 51 (discussion of inability of IMR Dr. Lewis to

observe Pike's "diagnosis" and "reports of pain").  This is not proper under the language of the

Plan.

A diagnosis is not a condition of coverage under the Plan. Rather, the Plan turns on

Disability as defined by the Plan.  Disabled or Disability means that Pike is prevented from

performing one or more of the Essential Duties of Any Occupation. Doc. 17-1 at 26-27 of 37.

Pike's ability to work the number of hours in the regularly-scheduled workweek for any

occupation for which she is qualified by education, training or experience and that meets an

---

[10] The R&R cites *Audino v. Raytheon Company Short Term Disability Plan*, 129 F. App'x 882 (5th Cir. 2005) (unpublished), for the proposition that an administrator must consider subjective complaints of pain. R&R p. 50. Hartford did this, as did each of its independent reviewing physicians. The *Audino* case is distinguishable because there, in determining whether the claimant could meet an own occupation definition for short term disability benefits, the employer provided a list of the tasks the claimant would be required to do in her specific job. The defendant there did not analyze the effect of her medical condition on those specific tasks. In contrast, here, Hartford did that analysis with the EARs and EAR addendums. Pike presented no evidence in the AR to contradict the final EAR and its analysis of whether she can meet the requirements of the Plan's "any occupation" standard.

earnings potential threshold as defined by the Plan language, means she is not disabled.  *See* AR 973-78, 985-92.

Thus, contrary to the R&R's findings, the administrator must determine not whether Pike has a diagnosis or a condition, but whether she can perform the essential duties of any occupation. This means the administrator must determine whether there are supported physical and mental limitations for the claimant, and whether in the context of those limitations, the claimant is rendered incapable of performing job duties of any occupation that meet the earnings standard, as defined by the Plan.

The R&R also makes findings that reduce the Plan's definition of "Disabled" or "Disability" to mean Plaintiff is "disabled" unless she is capable of "high-level" or high-paying jobs. R&R pp. 24, 26, 49. In other words, it solely focuses on the definition's earnings requirement. These purported findings reduce the import of the employability analyses Hartford conducted. The analysis married the claimant's physical capabilities, education, training, work history, and the definition's earnings requirement. AR 1926-33 (EAR), 1508-19 (First EAR Addendum), 1323-39 (Second EAR Addendum). The fact that Hartford's last employability analysis (AR 1323-39) identified "high-paying" jobs should not overshadow the fact that the jobs also suited Pike's overall functionality, including her physical and mental capacity for work based on the opinions of two treating physicians and two independent reviewing physicians.

       e.      *The R&R erroneously uses Pike's attorney's arguments in briefing as findings but these are not supported by the AR and are contrary to the law.*

The R&R improperly relies upon Pike's counsel's arguments as fact in several places, without evidence in the AR.  These "findings" are outside the AR and they undermine the administrative review process, which was Pike's opportunity to establish anything she wanted in the record on review for this Court.  It is improper for the R&R to take Pike's counsel's

15

arguments from briefing in the lawsuit as fact where that fact is not stated or supported by the AR. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998) (on *de novo* review court must not look beyond actual record that was before the plan administrator).

First, nowhere in the AR is there support for the R&R's finding that "[t]he SSA's determination that Plaintiff remains Totally Disabled under its standards, as of April 10, 2017, is further evidence [of Disability under the Plan]." R&R pp. 54-55. Rather, the R&R makes clear this is coming from Pike's argument in her brief. Doc. 17 at 12, 14; *see also* R&R p. 53, n.26. But the AR says nothing of the sort, and this position on the meaning of the April 10, 2017 letter was not presented by Pike in the administrative appeal process and is not proper for this Court's review. The AR contains the letter dated April 10, 2017, but it says nothing about Pike remaining Totally Disabled under the SSA's standards, as the R&R finds. *See* AR 1361. Rather, it states only that the SSA has decided it is not going to review Pike's SSD case at this time. *Id.* As Hartford pointed out, the regulations make clear that the SSA might waive its disability review for a wide variety of reasons, including based on its capacity for case reviews, backlog of pending reviews, projected number of new applications, and projected staffing levels. Doc. 26, at 18 n.38.[11] These R&R findings are speculative, erroneous, and not supported by the AR. And they lead to erroneous legal conclusions, as the R&R uses these findings to conclude that the

---

[11] Relatedly, the AR also does not support the R&R's statement, without citation to the AR, that "Hartford advocated Plaintiff's cause before the SSA." R&R p. 54. The R&R favorably cites from Plaintiff's argument in her counsel's appeal letter (R&R p. 54 (citing AR 1397)), but completely ignores the Plan language that it is a condition that she apply and that her benefits are reduced by other income, which includes social security disability income. *See* Doc. 17-1 at 24 of 37 ("You must apply for Social Security disability benefits when the length of Your Disability meets the minimum duration required to apply for such benefits."); *id.* at 28 of 37 ("Other Income Benefits includes social security disability benefits). The Plan also has other important features, including return to work incentives. *See, e.g.*, Doc. 17-1 at 19 of 37. Regardless, Other Income Benefits, which includes social security disability benefits, are deducted from the calculation of monthly benefit, by the plain language of the Plan. *Id.*

Social Security Administration determination is "evidence that Plaintiff is both unable to perform the essential duties of any occupation and that she is unable to earn the threshold salary under the Hartford policy terms." R&R pp. 54-55.  The SSA award with a physical assessment and "current evaluation" dated March 13, 2009 (AR 752-759), has no relevancy to whether Pike is disabled as of December 15, 2016—by nature of the date, it is based on outdated records and involves a time period for which Hartford already paid benefits.  *Cf. Nord*, 538 U.S. at 833 (explaining the multitude of differences between SSA and ERISA).

Second, the R&R purports to find typographical errors in the Dr. Lewis report "troubling" (R&R pp. 51-52), but the problem with these R&R statements is the Court has no evidence in the AR that any typos on dates impact the conclusion that there were no objective findings that prevent Pike's current ability to perform any occupation.  The only item the R&R points to is not actually record evidence in the AR but argument of Pike.  *Id.* p. 52 ("Although Hartford argues the error does not change the conclusions in the report, the Court is not so sure. According to Plaintiff, it is important . . . because it 'suggests that she is suffering from Transitional Syndrome, where the prior fusion causes increased stress on adjacent levels' and also implies 'possible further deterioration in the future.'") (quoting Plaintiff's Mot. Doc. 17, at 27); *see also* R&R p. 53 (citing Doc. 17, at 11).  It is improper for the R&R to characterize an argument from counsel about what medical evidence "suggests" or "implies" as a finding.  The R&R never identifies any impact in the AR that typographical errors have on the conclusions. Further, the R&R ignores that Dr. Sanghvi and Dr. Park (two treating physicians) also agreed with Dr. Lewis's conclusion of no restrictions or limitations, and that Dr. Gajraj never responded to repeated calls and inquiries to reconcile medical evidence. AR 1352 (7/13/17 questions faxed to Drs. Sanghvi and Gajraj; Response from Dr. Sanghvi); AR 1564 (Dr. Park completed form

that no recommendations for any specific activity limitations secondary to her condition).  It is

not possible for incorrect dates on these outdated medical records to have had an impact on Dr.

Lewis' opinions of Pike's present ability as of his report of July 19, 2017.  As discussed above,

past records do not show present disability.

> f.  *The R&R cherry-picks from the AR instead of reconciling the evidence as the plan administrator must do in its benefits decision.*

On *de novo* review, the Court "must take into account *all of the medical evidence*, giving

each doctor's opinion weight in accordance with the supporting medical tests and objective

findings that underlie the opinion."  *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 505

(W.D. Mich. 2006) (emphasis added).  The R&R fails to do that, instead accepting Dr. Gajraj's

ultimate opinion simply because he is her treating physician, rejecting the independent medical

reviewers, and cherry-picking other evidence from the AR to bolster its conclusion.[12]  This is

contrary to what a plan administrator must do, and thus what this Court must do on *de novo*

review.

The AR shows that Hartford reviewed and considered all medical records from Pike's

providers.  And the reviewers considered her medical history and her complaints of pain and the

impact of her pain.  Two of her physicians stated that Pike did not require any ongoing

restrictions or limitations from their standpoint.  AR 1352, 1564. And the third of her physicians,

Dr. Gajraj, was equivocal in his opinions. *Compare* AR 14 ("[e]ven limited physical exertions

---

[12] For example, the R&R finds Hartford treats the video surveillance as decisive (R&R p. 47), but the denial and appeal denial letters show that finding to be erroneous.  *See* AR 973-78, at 976.  Hartford's letters were clear that the video was simply one piece of evidence that Hartford considered. No one other than Pike has made the video surveillance the sole focus and attempted to turn it into a larger piece of evidence than it was. It simply corroborates that Pike has more physical ability than she previously reported. Another fact from the AR cherry-picked by the R&R is the discussion of the Sudoscan test on page 19 (citing AR 1747). The R&R fails to note that the AR also indicates a prior treating physician, Dr. Bernstein, had Pike do the objective "seated root test" and it came back negative.  AR 1877-78, 1880, 1882, 1884, 1886-87.

cause her to require significant down time" and Pike's medications "can impact cognition and the ability to perform detailed task"), *with* AR 1740-49, 9-13 at 1742-46, 1749, 10-13 (each record states Pike is "taking her medication as prescribed without significant side-effects and is gaining benefit in terms of analgesia and increased function" and the physical examination findings describe Pike as "alert, oriented, no signs of excess sedation," with "[g]ood remote memory," "[a]dequate attention span and able to concentrate").

Dr. Gajraj never bothered to contact or respond Hartford's reviewing physicians despite repeated attempts.  While the Hartford reviewing physicians reconciled the opinions of Dr. Gajraj, Pike never did, though she had an opportunity to do so through her treater Dr. Gajraj and through her appeal.  Essentially, the R&R's conclusions rest on the restrictions and limitations of one doctor, Dr. Gajraj. The other four doctors (her two treating physicians, Dr. Sanghvi and Dr. Park) and the independent reviewing physicians (IME Dr. Sklar and IMR Dr. Lewis) found no or limited restrictions or limitations.  AR 1352, 1564, 1342-50, 1528-30.

The R&R gives inappropriate weight to a single treating physician opinion and makes no attempt to reconcile the inconsistencies between Dr. Gajraj's records and opinions.  The R&R adopts Pike's "strong suggestion" about what Dr. Gajraj "felt"—that she was experiencing cognitive dysfunction—without looking to what his records actually show. R&R p. 44, n.22. This is erroneous. The R&R's reliance on Pike's competency to direct her claim proceeds also is contradicted by Dr. Gajraj's cognition findings.  *Compare* AR 1740-49 (present records), *with* AR 1799 (APS 3/19/14 checks "no" for cognitive impairment).  The R&R fails to account for the contradictions between Dr. Gajraj's opinion letter produced in the appeal and his medical records.  *Compare* AR 1740-49, *with* AR 14.  Moreover, Pike never raised "competency" in the

AR, and her detailed letters throughout the AR and the objective findings in her medical records in the AR prove otherwise.

Both the IME and IMR considered the medical and other records, Pike's subjective complaints, and her medication regimen.  Where the treating physicians equivocated on the restrictions and limitations of Pike, as here (*compare* AR 1352, 1564, 9-14, 1740-49), and the independent reviewers found no substantiation of subjective complaints with objective medical evidence and found that restrictions and limitations can accommodate her pain, Pike cannot meet her burden of proving present disability under the Plan using the AR. *See Holden v. Blue Cross & Blue Shield of Tex., Inc.*, No. H-07-2008, 2008 WL 4525403, at *30-31 (S.D. Tex. Sept. 30, 2018) (explaining that the defendant's evidence—numerous reports from treating and consulting physicians—outweighed the scant, contrary evidence offered by the plaintiff).  The Court should reject the R&R's contrary findings and recommendation.[13]

## II.     The R&R relies on law outside this Circuit that is contrary to the way the Fifth Circuit will decide these issues.

The R&R does not address case law cited by Hartford or rely on extant law from the Fifth Circuit.  The R&R's use of Ninth Circuit case law to justify these findings and conclusions is contrary to the law of this Circuit.  Thus, this Court should reconsider the legal determinations in the R&R that rely on out-of-state case law and ignore relevant Fifth Circuit case law.  The Fifth Circuit has clear precedent instructing administrators how to view LTD claims, and on *de novo* review, the Court is bound to look at the AR in accordance with those instructions.

---

[13] If the logic of the R&R is followed, an administrator must pay benefits perpetually if it ever pays under the more stringent "any occupation" standard, and may never terminate even when medical records and the claimant's own statements and actions show an ability to function and conduct daily living activities consistent with sedentary or light work.  *Cf. Hans v. Unum Life Ins. Co.*, No. CV 14-02760-AB (MRWx), 2015 WL 5838462, at *14 (C.D. Cal. Oct. 5, 2015) (looking at average daily activities and household chores for whether plaintiff had ability to perform sedentary or light work).

As an example of the R&R's reliance on out-of-state case law, the R&R tracks and very closely follows a district court order within the Ninth Circuit, *Reetz v. Hartford Life & Accident Insurance Co.*, 294 F. Supp. 3d 1068 (W.D. Wash. 2018), that no party here cited in their briefs or oral argument, and prior to the R&R being issued it was not presented to the parties. *Reetz* hinges on two principles that are inconsistent with Fifth Circuit law and the way district courts in the Fifth Circuit are approaching ERISA disability claims on *de novo* review.

First, *Reetz* relies on the treating physician rule and discounts an independent medical reviewer's report because that physician "did not examine Ms. Reetz in person" and could not "personally observe the effects of Ms. Reetz's diagnoses and assess the credibility of her reports of pain." *Id.* at 1083. Using these findings, *Reetz* concludes the treating physician opinions are "more reliable and probative" than the IMR opinions, just as the R&R does here. R&R p. 51. *Reetz* then uses the treating physician opinions to discount everything else in the record to conclude that the plaintiff could not perform any occupation. 294 F. Supp. 3d at 1085-86. However, as discussed above, these findings and legal standards are contrary to the Fifth Circuit. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 515 (5th Cir. 2010) ("That the independent experts reviewed Anderson's records but did not examine him personally also does not invalidate or call into question their conclusions."); *Vercher v. Alexander & Alexander, Inc.*, 379 F.3d 222, 233 (5th Cir. 2004) (following *Nord*); *see also Ariana M.*, 2018 WL 4384162, at *16.[14] The R&R's wholesale adoption of *Reetz* is error.

Second, *Reetz* relies on burden shifting to the administrator based on prior records and prior payments that has been rejected in the Fifth Circuit. In *Reetz*, the court used Hartford's

_____

[14] Of note, the Supreme Court has rejected the Ninth Circuit's standards in ERISA cases. *See Nord*, 538 U.S. at 834 (Ninth Circuit, 296 F.3d 823 (9th Cir. 2002), erred by employing treating physician rule); *Regula v. Delta Family Care Disability Survivorship Plan*, 266 F.3d 1130 (9th Cir. 2001), *cert. granted*, *judgment vacated*, 539 U.S. 901 (2003).

prior finding of disability, prior payment of disability for two years, and the earlier records to shift the burden to Hartford to show improvement.  294 F. Supp. 3d at 1079-80.  This is contrary to the way the Fifth Circuit views these issues and the burden of proof in disability cases.  *Hilton v. Ashland Oil Inc.*, 103 F.3d 124 (5th Cir. 1996) (unpublished); *cf. Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389 (5th Cir. 2007) (reversed and rendered for insurer on abuse of discretion standard where administrator paid benefits for five years where claimant continued to seek medical treatment and her treater stated she would be unable to return to any type of "gainful employment").

**III.    The R&R purports to award Plaintiff attorney's fees and costs without any motion practice and based on erroneous factual and legal conclusions.**

The R&R's findings in support of its recommendations for attorney's fees and costs for Pike are erroneous. R&R pp. 56-59. As an initial matter, because the R&R should not be adopted by the Court, Hartford challenges any purported fee and cost award to Pike.  Additionally, Pike has not moved for or met her burden of showing entitlement to fees under 29 U.S.C. § 1132(g)(1).  Should that occur, Hartford reserves its rights to challenge that motion, both on the ability to recover fees and on the reasonableness of any recovery.

However, because the R&R makes findings under the factors in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980), for a fee award to Pike, Hartford lodges these additional specific objections. The R&R improperly considers a purported conflict of interest in its analysis for a *de novo* case.  R&R pp. 57-58. The Supreme Court has foreclosed conflict of interest as a factor in a *de novo* case.  *Firestone Tire & Rubber Co. v. Bruch*, states that a conflict is "weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" 489 U.S. 101, 115 (1989) (quoting Restatement (Second) of Trusts § 187, Comment d (1959)).  The R&R's analysis acknowledges as much, by relying on a district court case from Ohio, *Hines v. Unum*

*Life Ins. Co. of America*, 2018 WL 6599404 (N.D. Ohio Dec. 17, 2018), that the R&R recognizes is "an abuse of discretion case." R&R p. 58.

But for the conflicts of interest issue, the distinction between a *de novo* and an abuse of discretion case is key. Time and time again, the Supreme Court has made clear that a conflicts analysis comes into play only on the abuse of discretion standard. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Bruch*, 489 U.S. at 115.  The Fifth Circuit recognizes this distinction, and has provided the types of things indicating a "conflict of interest [that] actually and improperly motivated the decision" to justify a district court's finding a "bad faith" for attorney's fees and costs.  *Schexnayder v. Hartford Life & Accid. Ins. Co.*, 600 F.3d 465, 472 (5th Cir. 2000). As an example, the Fifth Circuit noted that if "a plaintiff shows that the insurer provided additional compensation for plan administrators who denied claims or that the insurer has a history of biased claims, then the plaintiff will have made an adequate showing of bad faith" for fees under an abuse of discretion analysis. *Id.*  Ultimately, *Schexnayder* rejected a fee award because it found that the plaintiff "has not purported to benefit anyone" other than himself and that "both parties demonstrated merit in their claims." *Id.*

Not only is the abuse of discretion versus *de novo* standard key for the fees and costs analysis, there is simply nothing in the AR or properly before the Magistrate Judge that allowed her to make a "bad faith" finding for fees.  First, as discussed above, it is error for the R&R to rely upon outdated claims notations on lump sum settlement to conclude that Hartford had a "preferred course of action" for the R&R to impugn bad faith.  R&R p. 58. This finding is pure speculation and an improper reliance on Pike's counsel's arguments about notations in the claims notes.  *See* Doc. 17, at 8-10.  It is also outside of any AR evidence, and Pike did not seek to develop any affidavit or discovery to explain this AR evidence.  *Cf.* R&R p. 3, n.4 ("The Court

remains within the bounds of the administrative record.").[15]  The outdated claims notations also are contradicted by what the R&R acknowledges later, which is that in June 2016 Hartford obtained updated medical records from Dr. Gajraj for six office visits from February 2015 to May 2016. *Compare* R&R p. 58 (Citing AR 913-14), *with* R&R p. 18 (citing AR 1740-49).

Moreover, these outdated notations are not the decision the Court is reviewing: the issue before this Court is not whether the outdated lump sum settlement offers or the decision-making behind them was proper, it is whether Pike can prove disability as of December 15, 2016. The findings here—i.e., that Hartford paid LTD benefits effective April 24, 2008, to December 14, 2016 (R&R pp. 6, 25), and that upon seeking and analyzing updated medical records and new information from June 2016 to December 2016, including obtaining an independent medical review through a third party vendor as allowed by the Plan, Hartford terminated benefits (*see* R&R pp. 18-25)—refute any possible finding of bad faith.  Stated differently, Hartford paid benefits for eight years, then terminated benefits based on its investigation and evaluation and opinions of two independent medical specialists.  This is not a case of bad faith justifying fees and costs.  *Cf. Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389 n. 11 (5th Cir. 2007) (finding "no indication that Liberty's potential conflict of interest adversely affected the handling of Corry's claim.  Liberty's review of Corry's claim . . . demonstrated careful investigation" and Liberty engaged three specialists whose opinions were clear and unequivocal).

The R&R finds that the facts of the Pike case will "deter Hartford and other insurance companies from similar conduct" and that these litigated issues "are common."  R&R pp. 58-59. But other findings in the R&R undermine these very conclusions, particularly that Pike's medical

---

[15] The R&R ignores the procedures that Hartford puts in place in the Plan, including that the individual reviewing the appeal gives no deference to the initial benefit decision and is a different individual than the person who made the initial benefit decision and is not a subordinate of that individual.  Doc. 17-1, at 34 of 37.

history and the facts behind Hartford's termination decision "are long and complex" and that the

Magistrate Judge has not located "cases similar to this one from within this circuit."  *Id.* pp. 3, 34

n.18

In sum, the R&R's findings on the "factors"—which hinge on a purported conflict of

interest that is not applicable and not supported—are erroneous and do not support an award of

fees and costs against Hartford.

## <u>CONCLUSION</u>

Hartford respectfully submits that this Court should review the AR *de novo*, reject the

R&R, and issue judgment for Hartford.

*/s/ Jodi W. Dishman*
Jodi W. Dishman
Lead Attorney
Texas State Bar No.: 24062700
Oklahoma State Bar No.: 20677
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
E-mail: jodi.dishman@mcafeetaft.com

and

Anna E. Imose
Oklahoma State Bar No.: 32021
McAfee & Taft A Professional Corporation
Williams Center Tower II
Two West Second Street, Suite 1100
Tulsa, OK 74103
Telephone: (918) 587-0000
Facsimile: (918) 574-3031
E-mail: anna.imose@mcafeetaft.com

**COUNSEL FOR DEFENDANT**

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Lonnie Roach
Bemis, Roach & Reed
4100 Duvan Road, Bldg 1, Suite 200
Austin, TX 78759
Attorney for Plaintiff

*s/ Jodi W. Dishman*
Jodi W. Dishman

26