UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **Gina Pike** § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | CIVIL NO. :  4:17-cv-772 |
| § | Judge Mazzant |
| § | |
| **Hartford Life and Accident** § | |
| **Insurance Company** § | |
| § | |
| *Defendant* § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTION TO REPORT AND RECOMMENDATION**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff, Gina Pike, files this Response to Defendant Hartford Life and Accident Insurance Company's Objection to the Report and Recommendation of the United States Magistrate Judge, and in support would show:

*Preliminary Statement*

Since this case was subject to *de novo* review, "the court can and must come to an independent decision on both the legal and factual issues that form the basis of the claim. What happened before the Plan administrator or ERISA fiduciary is irrelevant." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007). The court must "independently weigh the facts and opinions in the administrative record to determine whether the

1

claimant has met his burden of showing that he is disabled within the meaning of the policy." *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010).

This is exactly what the Magistrate Judge did. In order to conduct the Trial on the Papers in this case, Judge Craven reviewed 151 pages of briefing by the parties, a 2,266 page Agreed Record, and held a 2-hour oral hearing. Her Report and Recommendation (R&R) includes over 300 factual citations to the Agreed Record.

While Hartford is understandably disappointed in the R&R, its objections fail to identify any mistakes of law. Even when Hartford purports to do so, such as stating that the R&R adopted and applied Social Security's treating physician rule, it is either indulging in hyperbole or simply mistaken. The R&R does no such thing.

Hartford's objections to the R&R are largely recycled arguments from its briefing. Hartford revisits a number of contested fact issues on which the Magistrate found Ms. Pike's evidence to be more compelling. Hartford's positions on these fact issues were carefully considered and rejected by the Magistrate, for the reasons detailed in the R&R. While Hartford disagrees with Judge Craven's determination of these contested fact issues, time and again it does not clearly identify *why* those determinations were wrong. It simply hopes for a different result from the District Court.

The R&R is thorough, well-supported factually and legally, and unlikely to be disturbed on appeal if adopted. The Court should overrule Hartford's objections and adopt the R&R in its entirety.

1. **The R&R does not apply Social Security's treating physician rule or give undue deference to Pike's treating physicians.**

Contrary to Hartford's objection, the R&R specifically rejects the application of Social Security's treating physician rule.[1] The court merely found the opinions of Pike's treating physicians to be "reliable and probative".[2] This is entirely appropriate for the trier of fact conducting a *de novo* review. The R&R gives extensive detail why these opinions were found reliable and probative, including consistency between doctors and over time, qualification of the doctors, supporting evidence of the doctors' opinions such as the surveillance and objective medical records, and Hartford's own action over the course of several years, finding these doctors' opinions to be reliable and probative.

In contrast, the R&R found the opinions of Hartford's two reviewers to be comparatively less reliable than the multiple treating physicians'. The court noted that the IME physician, Dr. Sklar, stated that Ms. Pike experienced pain, walked with a forward flexed posture holding her back, and had decreased sensation in her bilateral extremities, especially in the S1 distribution.[3] Dr. Sklar, however, did not feel pain to be a reason for disability, a position not supported in Fifth Circuit (or any other Circuit's) case law.

The physician who performed the medical review on appeal, Jamie Lewis, M.D. made a number of material errors in his report, including confusion over when Ms. Pike

---

1 *See* R&R, p. 50-51
2 R&R, p. 51
3 R&R p. 49

3

underwent surgery, belief Ms. Pike improved after her date of disability, belief Ms. Pike continues to utilize and receive benefit from a spinal cord stimulator, and belief that Ms. Pike reported no adverse effects of pain medication.[4]

It is plain that Hartford's reviewing doctors' opinions conflict with those of the treating physicians. While Hartford complains that the Magistrate found the opinions of the treating doctors to be more reliable than its two reviewers, it does not explain why the court should have credited the opinions of its reviewers over those of the treating doctors.

The R&R gives no special significance to the opinions of the treating doctors. Those doctors' opinions were simply far more convincing than those of Hartford's two reviewing doctors, both because of the strong supporting evidence for the treating doctors' opinions and the glaring deficiencies in the reviewing doctors' opinions.

### 2. The R&R does not improperly rely on "outdated records" to support a finding of disability under the terms of the policy.

Dr. Gajraj's opinion from June 6, 2017 is more than sufficient to support a fact-finding that Ms. Pike remains disabled.

> *Gina Pike suffers from chronic pain, secondary to lumbar degenerative disc disease/radiculopathy. Although she is capable of performing limited light tasks, I do not believe she is capable of working in a competitive environment. Even limited physical exertions cause her to require significant down time. If she were to attempt to return to even a sedentary work environment, she would require significant time off-task each day. I believe she could perform no more than 2-4 hours of work per day. She additionally requires the fentanyl patch 100 mcg/hr and Dilaudid simply to achieve limited function. These medications, however can impact cognition and*

---

4 R&R, p. 51-52

4

> *the ability to perform detailed tasks. I consider Ms. Pike to be disabled from competitive work.*[5]

The R&R properly details other evidence that supports its finding. Some of this evidence pre-dates the denial, but that does not make it any less probative. The record, for example includes restrictions from Neurosurgeon, Robert Martin, M.D. who states Ms. Pike could sit for no more than 2 hours in a day, stand for no more than 2 hours per day, walk for no more than 2 hours per day, that she would have to alternate between sitting, standing, and walking, and that her condition was "**permanent**".[6] Similarly, objective tests a year later revealed **permanent nerve damage**.[7] Evidence of "permanent" restrictions in 2008 and "permanent" nerve damage in 2009 is probative that these conditions continued to exist in 2016, when Hartford denied this claim.

Similarly, Hartford's multiple determinations over time that Ms. Pike was disabled, in part, due to her use of class II medications, which she continues to use, suggests that the class II medications would continue to impact Ms. Pike's ability to work. Hartford's decision that Ms. Pike's cognitive decline made it inappropriate to even consider another lump sum settlement, is probative on the question of whether Ms. Pike remains disabled. This is especially true given the absence of any reliable evidence that Ms. Pike has medically improved.

### 3. The R&R does not improperly elevate subjective complaints by Pike over objective medical evidence.

---

[5] R&R, p. 43
[6] R&R, p. 39, referencing AR 1925
[7] Id.

5

Hartford objects that the R&R improperly relies on Pike's subjective complaints over objective evidence, but then offers no examples of the "objective evidence" it claims outweighs Pike's subjective complaints.

Hartford cannot credibly argue that Pike does not suffer from chronic pain. Its own IME physician, Dr. Sklar states in his initial report "This claimant has pain."[8] When asked to view the surveillance video and clarify his opinion, Dr. Sklar did so, stated the surveillance did not change his opinions, and repeated: "This claimant has pain and pain is clearly not a reason not to work."[9]

Hartford cannot credibly argue that the record does not contain extensive, objective evidence supporting Pike's subjective complaints. The R&R references Pike's diagnostic lumbar discogram[10], MRI demonstrating instability at L3-4,[11] extreme interbody fusion at L3-4,[12] CT scan, x-ray, MRI, and nerve conduction study,[13] failed surgical spinal stimulator,[14] and Sudoscan.[15] The R&R weaves its consideration of these objective tests with the opinions and conclusions of multiple treating physicians over the course of many years.

In truth, Hartford's "objection" is nothing more than its complaint that the R&R did not improperly defer to its claim determination. Hartford writes "Hartford

---

8 AR 1530
9 AR 1525
10 R&R p. 5
11 Id.
12 Id.
13 R&R p. 8
14 R&R p. 9
15 R&R p. 44

6

considered all of the medical and other evidence";[16] "all of this was factored in by Hartford in its benefits determination";[17] "The IME and IMR took all available evidence and documentation into account";[18] "Hartford's analysis as the administrator followed exactly what courts have said administrators are to do with subjective and objective evidence."[19]

Hartford forgets that in a *de novo* review, "What happened before the Plan administrator or ERISA fiduciary is irrelevant." *Diaz*, supra, 499 F.3d at 643.  The fact that Hartford's conclusion on the evidence at the claim stage differed from that of the Magistrate at trial does not make the Magistrate's conclusion erroneous.

### 4.     The R&R does not misstate the policy's definition of "Disability".

Contrary to Hartford's objection, the R&R correctly states the definition of "disabled".[20] Next, the R&R correctly applies that definition to the facts in the record, noting that an essential duty of Any Occupation is the ability to work a regular workweek.[21] The court notes that if Pike can establish that she cannot work the number of hours in a regular work week, then she has established that she remains disabled under the terms of the policy.[22] After correctly identifying the proper definition of disability,

---

16 Defendant's Objection, p. 12
17 Id.
18 Defendant's Objection, p. 13
19 Defendant's Objection, p. 14
20 R&R, p. 11
21 *See, e.g.* R&R p. 36
22 Id.

the R&R devotes the next 10 pages to detailing the evidence establishing that Pike cannot work a regular workweek.

There is no fair reading of the R&R suggesting that the Magistrate "misstated" the definition of "disability" or conflated "disability" with "diagnosis" as Hartford suggests. To the contrary, the R&R correctly identified and carefully applied that definition.

**5.     The R&R does not adopt Pike's counsel's arguments as fact.**

Hartford complains that the R&R erroneously adopts Pike's arguments as fact, but then gives examples that demonstrate that this objection is spurious. Hartford suggests, for example, that the April 10, 2017 letter from the Social Security Administration, stating that the SSA does not need to review Ms. Pike's SSDI claim at that time, does not indicate that the SSA considers Ms. Pike to still be disabled. Hartford suggests that, perhaps, the SSA was simply too busy or had too many pending reviews to consider Ms. Pike's claim at that time. Hartford states the R&R should have adopted, instead, its interpretation of this letter from its briefing. Hartford's argument, however, was wrong.

In its briefing, Hartford argued that the SSA could simply decide it was too busy or understaffed to conduct a disability review, and cited 20 CFR § 404.1590(g) as its legal authority for this argument.[23] The regulation Hartford cites, however, does not apply to Ms. Pike's SSDI claim.   20 CFR § 404.1590(g) only applies to cases involving "nonpermanent impairment".   The regulation states that, in certain specified

---

23 See, Defendant's Response to Plaintiff's Motion for Judgment [ECF. Doc. 26] p. 18, n. 38

circumstances, the SSA can delay its review of nonpermanent impairment cases beyond 3 years.

But the date of Ms. Pike's SSDI decision was April 12, 2009.[24] The 2017 letter from the SSA demonstrates that this was a 7-year review, not a 3-year review. A 7-year review interval suggests that the SSA considers Ms. Pike's impairment to be permanent. *See, e.g.,* 20 CFR § 404.1590(d). Moreover, the letter stated:

> *We sent you a letter telling you that we were going to review your disability case. However, we do not need to review your case at this time. Therefore we will not contact your doctor now. We will keep any information that you have given us.*[25]

Contrary to the argument Hartford briefed, this letter does not suggest the SSA was simply too busy to conduct a review. This was the letter *ending* the continuing disability review, not waiving it. There is no provision in the regulations for extending a review interval beyond 7 years. Although the record does not include the earlier letter from the SSA initializing the continuing disability review, the April 10, 2017 letter states it was sent. Upon opening its review, Ms. Pike was required to provide the SSA with documentation supporting her continuing entitlement to benefits:

> *(a) General. If you are entitled to benefits or if a period of disability has been established for you because you are disabled, we will have your case file with the supporting medical evidence previously used to establish or continue your entitlement. Generally, therefore, the medical evidence we will need for a continuing disability review will be that required to make a current determination or decision as to whether you are still disabled, as defined under the medical improvement review standard.*

---

24 AR 2059
25 AR 1361

9

> *(b) Obtaining evidence from your medical sources. You must provide us with reports from your physician, psychologist, or others who have treated or evaluated you, as well as any other evidence that will help us determine if you are still disabled. See § 404.1512. You must have a good reason for not giving us this information or we may find that your disability has ended.*

20 CFR § 404.1593.

<u>All</u> SSDI claims are reviewed.   As set out in 20 CFR § 404.1589:

> *After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for disability cash benefits. We call this evaluation a continuing disability review….When we begin such a review, we will notify you that we are reviewing your eligibility for disability benefits, why we are reviewing your eligibility, that in medical reviews the medical improvement review standard will apply, that our review could result in the termination of your benefits, and that you have the right to submit medical and other evidence for our consideration during the continuing disability review.*

The April 10, 2017 letter from the SSA indicates the SSA previously opened a continuing disability review of Ms. Pike's claim, suggests it collected evidence from her, and then decided it was no longer necessary to review her claim.  This is consistent and appropriate, because a 7-year review interval indicates that the SSA considers Ms. Pike's impairment to be permanent.  The review was simply to determine whether she remained disabled.  The regulations required the SSA to determine whether Ms. Pike remained disabled.  The letter in the record demonstrates that is exactly what it did.

Hartford next argues that the R&R was wrong to find the "typographical errors" in Dr. Lewis' report "troubling", and suggests this was, once again, the fault of Pike's counsel, for stating the sequence of Pike's surgeries and symptom development suggests transitional syndrome.  But Pike's argument was that Hartford's reviewer's multiple

10

mistakes were material, not simply incidental or "typographical errors".[26] The fact that Pike's L4-L5, L5-S1 fusion pre-dated her worsening pathology at L3-L4 *does* suggest transitional syndrome, also known as "Adjacent Segment Disease".[27] Indeed, this was the primary question neurosurgeon, Mark Murphy, M.D., considered in his December 4, 2007 neurosurgical consultation:[28]

> *The main question I have is whether this patient's pain is simply due to postoperative change or to segmental instability, for example, at L3-L4 above the fusion. She is thin and the paraspinous musculature is probably exactly over the beads of the pedicle screws. The dissection for this operation is quite extensive, as you well know. The fact though is that current symptoms did not seem to worsen until about two years post-op, which would be more in favor of delayed segmental instability above the fused segments as being etiologically relevant.*[29]

"Delayed segmental instability above the fused segments as being etiologically relevant" is surgeon-speak for "Adjacent Segment Disease", which is also known as "transitional syndrome."[30] This was Dr. Murphy's quandary—was Ms. Pike's worsening pain simply post-surgical pain from her previous L4-L5, L5-S1 fusion, or was it due to new instability at her L3-L4 level *resulting* from her prior surgery. The answer to this question was important to Dr. Murphy because "the dissection for this operation is quite extensive". It should have been, and possibly would have been to Dr. Lewis, had he known the actual sequence of surgeries.

---

26 *See e.g.,* Plaintiff's Motion for Judgment, [ECF doc. 17, p. 26-27]
27 https://www.burtonreport.com/infspine/surgstabiltransitionalsynd.htm
28 AR 2102-2104
29 AR 2104
30 *See, e.g.,* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5432450/

11

The Magistrate considered, and rejected Hartford's argument that Dr. Lewis simply made typographical errors in his report. It was not erroneous for Judge Craven to find those errors "troubling" and therefore give less weight to Dr. Lewis' opinion.

### 6. The R&R does not improperly "cherry pick" the Agreed Record.

Once again, Hartford's objection is nothing more than its complaint that the Magistrate considered the evidence and reached a different conclusion from Hartford. It states the R&R simply accepted Dr. Gajraj's ultimate opinion "simply because he is her treating physician". Nowhere does the R&R do so. Judge Craven explained in detail why she found some evidence more probative and some evidence less probative.

Hartford mischaracterizes the evidence, suggesting that multiple treating physicians equivocated on Ms. Pike's restrictions and limitations, but gives citation to the record that shows no such thing. Once such citation is to an acknowledgment from Ms. Pike's gastroenterologist stating that he had not issued restrictions or limitations. Another is simply to a set of medical records from Dr. Gajraj, where the reader is presumably expected to distil the equivocation from the totality of the records.

Hartford continually points out that Dr. Sanghvi, Ms. Pike's primary care physician, who does not treat her for her chronic pain syndrome, issued no restrictions for her. Why would she have? Dr. Sanghvi had been Ms. Pike's primary care doctor for

2 months at the time of the denial and noted in her records that Ms. Pike's chronic pain syndrome was managed by her Pain Management doctor.[31]

Hartford similarly focuses on the fact that Dr. Park, Ms. Pike's gastroenterologist who manages her celiac disease, has issued no restrictions or limitations. Once again, why would he have? Ms. Pike is not disabled due to celiac disease. This is simply an incidental condition she suffers from.

Had Dr. Sanghvi or Dr. Park issued disabling restrictions and limitations for Ms. Pike, when neither doctor treated her for her disabling condition, it is certain Hartford would have been highly critical.

### 7. The R&R does not improperly rely on case law from outside the Fifth Circuit.

This objection appears solely based on the R&R's citation to *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F .Supp 3d 1068 (W.D. Wash. 2018), another case where a court disagreed with a claim determination by Hartford. Contrary to Hartford's suggestion, it is not improper for a court to find the reasoning of an opinion persuasive, even where neither party cites the case in briefing.

Perhaps the reason Judge Craven found *Reetz* to be instructive is the similarity of Hartford's arguments to those in this case. In *Reetz*, Hartford asserted that the Plaintiff medically improved prior to its denial. The *Reetz* court reviewed the evidence and disagreed.[32] This case has a similar claims history. Hartford found Pike to be disabled

---

31 AR 6
32 R&R p. 40, n. 20

13

from 2008 through 2016, then denied her claim. Hartford's primary argument in its briefing was that the medical evidence showed Ms. Pike medically improved. Judge Craven reviewed the evidence and disagreed.

Hartford first misrepresents the holding in *Reetz*. As it has in this case, Hartford states *Reetz* relied on the treating physician rule to discount the opinions of Hartford's reviewing doctors. Once again, Plaintiff assumes Hartford is merely engaging in hyperbole.[33] The *Reetz* court specifically acknowledges that there is no "treating physician rule" in ERISA cases. *Reetz*, at 1083.

None of the legal principles attributed to *Reetz* in the R&R are controversial. The R&R first references *Reetz* in confirmation that a Rule 52 bench trial is an appropriate procedure to decide this case.[34] Hartford never objected otherwise.

The R&R next refers to *Reetz* for the principle that an insurer is not burdened by the logical inference that when a claimant is disabled, it is expected that the medical records would show improvement before the claimant would later be determined to not be disabled.[35] Does Hartford now suggest that an insurer *is* burdened by this logical inference? If so, how? Why would the Fifth Circuit find differently than the *Reetz* court?

---

33 It is also possible that Hartford simply does not know what the "treating physician rule" encompasses. Under Social Security's "treating physician rule" a medical opinion from a treating source is given more weight than that of a non-treating source. If the opinion is also supported by medically acceptable clinical and laboratory evidence, it is given controlling weight. *See*, 20 CFR 404.1527(c). This rule was withdrawn in 2017.
34 R&R p. 32
35 R&R p.40

14

The R&R next cites *Reetz* for the thoroughly uncontroversial statement that a district court, on *de novo* review, may give appropriate weight to a treating physician's conclusions, if it finds the conclusions reliable and probative.[36]

None of these legal principles are controversial. There is no reason to expect that the Fifth Circuit would hold differently than the *Reetz* court.

**8.     The R&R does did not improperly consider the Bowen factors to recommend an award of attorney's fees and costs to Pike, nor did the Magistrate apply the wrong law or reach the wrong conclusions.**

Contrary to Hartford's objection, the R&R did not award attorney's fees and costs to Pike. On the contrary, the R&R specifically recommended that, within twenty days from the date of any Order adopting the R&R, Pike be directed to file a post-judgment motion for pre-judgment interest, costs and attorney's fees. The R&R specifies that any such motion must be legally and factually supported, and that Hartford shall file a response.

Hartford's true complaint appears to be that Judge Craven determined an award of attorney's fees would be appropriate, based on an analysis of the *Bowen* factors, and that one of those factors was the degree of Hartford's culpability or bad faith. Hartford strenuously objects that the R&R improperly considered Hartford's conflict of interest, since this case was reviewed *de novo*.

---

36 R&R p. 51

15

But the R&R did not consider Hartford's conflict of interest when determining the merits of the case and offers no authority for its position that this issue is out-of-bounds when considering attorney fee awards in *de novo* cases.

Moreover, when Hartford denied Ms. Pike's claim, it *was* burdened by a conflict of interest, since it both determined Ms. Pike's entitlement to benefits and paid those benefits out of its own pocket. See, e.g., *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348, (2008). When Hartford denied Ms. Pike's claim, 15 months prior to the Fifth Circuit releasing *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018), Hartford likely believed it still enjoyed discretionary review.

Even during the course of this lawsuit, Hartford did not candidly admit this case was subject to *de novo* review. It's refusal to do so ultimately forced Plaintiff to file a motion to determine the appropriate standard of review [ECF. doc. 15]. After steadfastly refusing to agree on the standard of review[37], Hartford stipulated to *de novo* review on the date its response to Plaintiff's motion was due [ECF. doc. 16].

Hartford asks this court to distinguish between *de novo* cases and discretionary cases, when considering an insurer's conflict of interest solely on the issue of an attorney fee award, and conflates such a consideration of conflict of interest with deciding the merits of the case. But while *de novo* review protects a claimant from the deleterious impact of an insurer's conflict of interest in a claim determination, it does not, by

---

37 See, e.g. Certificate of Conference, Plaintiff's Motion to Determine the Appropriate Standard of Review

16

extension, impact the culpability of an insurer solely in the matter of the appropriateness of an attorney fee award.  Even though not mandatory, the *Bowen* factors are a far better metric for making this consideration, than simply considering the standard of review.

Hartford's final objection should be overruled.

WHEREFORE, Plaintiff respectfully submits her Response to Hartford's Objection, and asks the Court to adopt the Report and Recommendation of the United States Magistrate Judge.

                      Respectfully Submitted

BEMIS, ROACH & REED
4100 Duval Rd., Bldg. 1, Suite 200
Austin, TX 78759
(512) 454-4000
(512) 453-6335 Facsimile
lonnie@brrlaw.com

By:    /s/ *Lonnie Roach*
      LONNIE ROACH
      Texas State Bar No. 16967600

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

By my signature above, I certify that on February 28, 2019, I electronically filed the forgoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

| | |
|---|---|
| Jodi W. Dishman | Anna E. Imose |
| McAfee & Taft, | McAfee & Taft, |
| a Professional Corporation | a Professional Corporation |
| 10th Floor, Two Leadership Square | Williams Center Tower II |
| 211 North Robinson | Two West Second Street, Suite 1100 |
| Oklahoma City, OK  73102 | Tulsa, Oklahoma 74103 |