UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **Gina Pike** § | | |
| § | | |
| *Plaintiff* § | | |
| § | | |
| v. § | CIVIL NO. : | 4:17-cv-772 |
| § | Judge Mazzant | |
| § | | |
| **Hartford Life and Accident** § | | |
| **Insurance Company** § | | |
| § | | |
| *Defendant* § | | |

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY TO
PLAINTIFF'S RESPONSE TO DEFENDANT'S
OBJECTION TO REPORT AND RECOMMENDATION**

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff, Gina Pike, files this Surreply to Defendant's Reply to Plaintiff's Response to Defendant Hartford Life and Accident Insurance Company's Objection to the Report and Recommendation of the United States Magistrate Judge, and in support would show:

### Hartford's Point 1

### First--Regarding the Treating Physician Rule

In its Objection to the Report and Recommendation, [ECF. Doc. 37] Hartford states the R&R errs by applying Social Security's Treating Physician Rule.[1] Hartford also objected to the R&R's citation to *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp. 3d 1068 (W.D. Wash. 2018), writing that "*Reetz* relies on the treating physician rule".[2]

---

[1] Defendant's Objection to Report and Recommendation, p. 2-5
[2] Defendant's Objection to Report and Recommendation, p. 21

In its Reply, Hartford now abandons its specific objection that the R&R applied Social Security's Treating Physician Rule, and merely argues that the R&R gave undue deference to Pike's treating physicians and "picked" at Hartford's reviewers. Hartford acknowledges that the R&R devoted 5 pages of analysis to explaining why Dr. Lewis' and Dr. Sklar's opinions were deemed less reliable and accorded less weight. Hartford fails to explain why that analysis is flawed.

The R&R correctly recognizes that, although there is no treating physician preference in the ERISA context, "this does not mean that a district court, engaging in a *de novo* review, cannot evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative." *See*, R&R, p. 50-51. This is exactly what the R&R does. It gives appropriate weight to the treating physicians' conclusions, and no more.

### Second--Regarding Pike's Required Use of Class II Narcotics

In its Reply, Hartford writes there is no evidence in the Agreed Record that Hartford ever determined that Pike was disabled by her use of Class II Narcotics. On the contrary, on April 22, 2010, Hartford wrote:

> Based on the history of the clmt's multiple back surgeries, continued treatment for severe back pain and in to her legs (including class II meds and spinal stimulator) it is likely clmt would be unable to participate in any type of work activity on a full time basis. Clmt's level of medication and need to be bed-ridden for multiple days at a time would impact even limited activity and would be unable to sustain full time work.[3]

---

3 AR 941

2

On June 4, 2011, Hartford wrote substantially the same thing.[4] It did so again on September 17, 2011.[5] On January 4, 2013, Hartford wrote "continued pain management supports continued [total disability]".[6] On July 24, 2015, Hartford wrote:

> Clmt reports significant memory issues d/t class II narcotics she is taking for pain relief. Clmt state she is unable to remember things well, has times when there is a spike in her Fentanyl patch that causes her to feel dizzy, nauseous and "loopy". Clmt reports she does not drive at all. Clmt states she has a hard time remembering specific dates, numbers, what happened on certain dates and that her husband is tired of being her caretaker. LSS would not be appropriate based on Clmt's cognitive decline and her reports that she may be getting a divorce.[7]

### Third — Regarding Permanent Restrictions

In its Reply, Hartford notes that in 2008, neurosurgeon, Robert Martin, M.D. issued Pike permanent restrictions of 1 hour sitting--2 hours total in a day, 1 hour standing--2 hours total in a day, and 1 hour walking--2 hours total per day.[8] Hartford then notes that in 2010, [orthopedic] surgeon, Ralph Rashbaum, M.D. issued restrictions that Pike could do these activities for 15-20 minutes at a time, for no more than 4 hours per day cumulatively.[9]

Hartford then implausibly argues that Dr. Rashbaum's 2010 restrictions of up to 4 hours of activity per day are *less restrictive* than Dr. Martin's 2008 restrictions of up to 6

---

4 AR 922
5 AR 918
6 AR 916
7 AR 913-914
8 AR 1925
9 AR 1908

3

hours activity per day, and this somehow proves its argument that the R&R relies on "outdated" records.

### Fourth—Regarding Nerve Damage

Hartford argues that the statement in the R&R that Pike has permanent nerve damage comes from Pike's "self-report" and should therefore be discounted. This evidence is in the Agreed Record, however, and was not challenged by Hartford during the administrative process. In addition to Pike's report to Hartford in 2009, the record contains the EMG from July 16, 2009, where this nerve damage was documented.[10] The study demonstrated that Pike's left tibial H-Reflex was absent, and that she had mild and remote bilateral L5 radiculopathies, as well as a minimal, left S1 radiculopathy. This EMG report was in the Social Security record and given to Hartford with Pike's administrative appeal. Hartford did not order it or the follow-up office notes because at the time Pike reported it to Hartford, Hartford did not feel it necessary, writing "no specific medical notes provided or RL's given. No updates needed at this time."[11]

### Fifth—The Social Security Administration's Finding of Continued Entitlement to Benefits

Despite the fact that Pike was first found to be disabled by the Social Security Administration on April 12, 2009,[12] and informed by the Social Security Administration that it closed its continuing review on April 10, 2017, four months after Hartford's

---

10 AR 2218
11 AR 956
12 AR 2059

4

denial,[13] Hartford argues that this does not suggest that the Social Security Administration continues to believe Pike is disabled under its standards.

Hartford speculates that the Social Security Administration could have possibly reviewed Pike's SSDI claim at 3-year intervals, suggesting the SSA did not consider her disability to be permanent. Even if this were true and the SSA had reviewed Pike at 3-year intervals, this would mean that the SSA found Pike to be disabled in 2009, reviewed her SSDI claim in 2012--and found her to continue to be disabled, reviewed her again in 2015--and found her to continue to be disabled, and then apparently initiated yet another review sometime prior to the April 10, 2017 letter, collected information pertaining to Pike's ongoing disability, only to then decide it was too busy to review her claim again. Hartford is better off with the inference reasonably drawn from the SSA's single review.

Regardless of whether the SSA initiated a 7-year review, collected evidence, then determined that it no longer needed to conduct a review, or conducted two prior reviews, collected evidence for a third, then determined it no longer needed to conduct a review, the conclusion is the same. As of April 10, 2017, the SSA considered Pike to remain entitled to benefits. The reasonable inference is that it continued to believe her to be disabled under its rules.

### Final — Adjacent Segment Disease
### a/k/a Transitional Syndrome

Hartford misunderstands Pike's issue with its reviewer, Dr. Lewis. Although the

---

[13] AR 1361

5

evidence in the record suggests the possibility that Pike's disabling 2008 surgery was necessitated by her previous 2002 surgery,[14] Pike's concern is not that Dr. Lewis' confusion prevents him from realizing this possibility, it is that his report is riddled with material mistakes and therefore unreliable. Dr. Lewis incorrectly believes:

- Pike's 2008 L3-4 surgery occurred prior to her 2002 L4-S1 surgery;
- Pike's 2009 surgery was to remove hardware from the L3-4 surgery;
- Pike continues to use the spinal cord stimulator and it provides some relief;
- Pike underwent L4-S1 surgery in 2012, and improved post-operatively;
- Pike reports no adverse medication side effects;
- Hartford's surveillance shows physical activity inconsistent with Pike's report.

All of these beliefs are wrong. Dr. Lewis' opinion, given while holding these incorrect beliefs is therefore unreliable. Hartford's characterization of Dr. Lewis' mistakes as "typographical errors" is not credible and was rightly rejected by the Magistrate.[15] The R&R properly found these mistakes to be "troubling" and properly accorded less weight to Dr. Lewis' opinion because of them.

### Hartford's Point 2

Apparently, 10 pages is insufficient space for Hartford to fully explore its issues with the R&R and Pike's Response to Hartford's Objection. Hartford's Point "2" is largely a grab-bag of the issues that did not make the cut for Point "1". Pike believes these issues

---

14 *See, e.g.*, AR 2104
15 R&R, p. 52

6

have been adequately explored in her Response, and therefore chooses to stop beating this dead horse--with one exception.

While Hartford no longer claims *Reetz,* <u>supra</u> relied on Social Security's Treating Physician rule, it now misrepresents the holding of *Reetz* and mischaracterizes the R&R's citation. The R&R did not state *Reetz* shifts the burden of proof and requires that a court see evidence of improvement in the record before sustaining a denial.

The R&R refers to *Reetz* for the principle that an insurer is not burdened by the logical inference that when a claimant has already been determined to be disabled, it is expected that the medical records would show improvement before the claimant would later be determined to not be disabled.[16] This was not a holding. It was not a legal principle. An insurer should never be burdened by a simple, logical inference.

WHEREFORE, Plaintiff respectfully submits her Surreply and asks the Court to adopt the Report and Recommendation of the United States Magistrate Judge.

            Respectfully Submitted,

            BEMIS, ROACH & REED
            4100 Duval Rd., Bldg. 1, Suite 200
            Austin, TX 78759
            (512) 454-4000
            (512) 453-6335 Facsimile
            lonnie@brrlaw.com

     By:   */s/ Lonnie Roach*
            LONNIE ROACH
            Texas State Bar No. 16967600

            *Attorneys for Plaintiff*

---

16 R&R, p.40

**CERTIFICATE OF SERVICE**

By my signature above, I certify that on March 13, 2019, I electronically filed the forgoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

| | |
|---|---|
| Jodi W. Dishman | Anna E. Imose |
| McAfee & Taft, | McAfee & Taft, |
| a Professional Corporation | a Professional Corporation |
| 10th Floor, Two Leadership Square | Williams Center Tower II |
| 211 North Robinson | Two West Second Street, Suite 1100 |
| Oklahoma City, OK  73102 | Tulsa, Oklahoma 74103 |