# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GINA PIKE | § | |
| | § | |
| V. | § | Civil No.  4:17CV772 |
| | § | Judge Mazzant/Magistrate Judge Craven |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636.  On January 31, 2019, the Magistrate Judge issued a Report and Recommendation, finding for Plaintiff under recommended findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).  Dkt. # 33.  Defendant Hartford Life and Accident Insurance Company ("Defendant") filed objections to the Report and Recommendation. Plaintiff Gina Pike ("Plaintiff") filed a response to the objections. Pursuant to the Magistrate Judge's March 1, 2019 Order, Defendant filed a reply and Plaintiff filed a surreply.  The Court conducts a *de novo* review of the Magistrate Judge's recommended findings and conclusions.

## BACKGROUND

This Employee Retirement Income Security Act ("ERISA") action concerns the termination of Plaintiff's long term disability ("LTD") benefits pursuant to 29 U.S.C. § 1132 (a)(1)(B).[1]

---

[1] "ERISA provides federal courts with jurisdiction to review benefit determinations by fiduciaries or plan administrators." *Bellard v. Unum Life Ins. Co. of Am.*, No. CV 15-0428, 2016 WL 7108577, at *5 (W.D. La. Dec. 5, 2016) (quoting *Estate of Bratton v. National Union Fire Ins. of Pittsburgh, PA*, 215 F.3d 516, 520-21 (5th Cir. 2000) (citing 29 U.S.C. § 1132(a)(1)(B))). Under ERISA, a plan participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

Defendant issued an insurance policy, identified as Hartford policy number GLT-675193 ("the Policy"), effective January 1, 2005, describing benefits effective July 1, 2016 to Plaintiff's employer, Gambro, Inc. Plaintiff is insured for LTD benefits under the Policy. The Policy does not grant discretionary authority to the Plan Administrator or the Claims Administrator.

Defendant paid Plaintiff's claim for LTD benefits from April 24, 2008 through December 14, 2016, the period of time when Defendant determined Plaintiff met the definition of "disability" in the Policy. However, after later determining Plaintiff was unable to prove she continued to be "disabled" under the Policy, Defendant discontinued LTD benefits effective December 15, 2016. The issue is whether Plaintiff is entitled to receive LTD benefits after December 14, 2016 under the Policy. Plaintiff seeks the benefits she has been denied plus pre-judgment and post-judgment interest, recovery of attorney's fees and costs, clarification of her right to receive future benefits under the policy, and any other appropriate equitable relief. Dkt. # 1 at 3.

The parties stipulated a *de novo* review applies in this case.[2] *See* Dkt. # 16. The parties then

under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). The parties do not dispute that Plaintiff, as a participant under a qualifying ERISA plan, is entitled to bring this suit under ERISA.

[2] In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), the Supreme Court held that "denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." "That means the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999), *cert. denied*, 528 U.S. 964 (1999).

"Although *Firestone* established a *de novo* default, the exception quickly swallowed the rule: simply by inserting an unambiguous discretionary clause into a plan document, the administrator could ensure that a reviewing court would employ a highly deferential abuse-of-discretion or arbitrary-and-capricious standard in evaluating a denial of benefits." *Weisner v. Liberty Life Assurance Company of Boston*, 192 F. Supp. 3d 601, 609 (D. Md. 2016). State legislatures and insurance regulators have in the recent past enacted statutes, regulations, and administrative rules that either prohibit outright the use of discretionary clauses in insurance contracts or impose

filed cross motions for judgment on the record as well as the administrative record compiled by Defendant during the administration of Plaintiff's claim (the "Agreed Administrative Record" or "AR").

## FEDERAL RULE OF CIVIL PROCEDURE 52

Both parties elected to proceed pursuant to Federal Rule of Civil Procedure 52, which governs actions "tried on the facts without a jury." Rule 52 requires the Court "find the facts specifically and state its conclusions of law separately." FED. R. CIV. P. 52(a).

In the Fifth Circuit, "Rule 52(a) does not require that the district court set out [its] findings on all factual questions that arise in a case." *Koenig v. Aetna Life Ins. Co.*, No. 4:13-CV-0359, 2015 WL 6554347, at *3 (S.D. Tex. Oct. 29, 2015), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461 (5th Cir. 2018) (quoting *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1054 (5th Cir.1997) (citing *Golf City, Inc. v. Wilson Sporting Goods Co., Inc.*, 555 F.2d 426, 433 (5th Cir.1977))). Nor does it demand "punctilious detail [or] slavish tracing of the claims issue by issue and witness by witness." *Koenig*, 2015 WL 6554347, at *3 (citations omitted). Rather, a court's "[f]indings [are sufficient to] satisfy Rule 52 if they afford the reviewing court a clear understanding of the factual basis for the trial court's decision." *Id.* (citations omitted).

According to courts outside the Fifth Circuit, using Rule 52 is effective in the ERISA context because courts may resolve factual disputes and issue legal findings without the parties resorting to

limitations on the content and format of these clauses. *Id.* (citing *Davis v. Unum Life Ins. Co. of Am.*, No. 4:14–cv–00640–KGB, 2016 WL 1118258, at *3 (E.D. Ark. Mar. 22, 2016) (noting that, as of 2015, nearly half of the states had implemented or were in the process of implementing such restrictions)). Texas is among those states and recently enacted a law banning insurers' use of delegation clauses. *See* TEX. INS. CODE§ 1701.062(a).

cross motions for summary judgment. *Tran v. Minnesota Life Ins. Co*., No. 17-CV-450, 2018 WL 1156326, at *5 (N.D. Ill. Mar. 5, 2018); *see also Kearney*, 175 F.3d at 1095 (noting "the district court may try the case on the record that the administrator had before it."). In a trial on the administrative record, the district judge reviews the evidence to determine "whether [the plaintiff] is disabled within the terms of the policy." *Kearney*, 175 F.3d at 1095. Further, "in a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Id.*

## REPORT AND RECOMMENDATION

After hearing oral argument on the parties' cross motions, the Magistrate Judge issued a 60-page Report and Recommendation ("R&R") on January 31, 2019, finding for Plaintiff. Dkt. # 33. The Magistrate Judge's recommended findings and conclusions are based upon the Agreed Administrative Record. Plaintiff's lengthy medical history, as well as the facts behind Defendant's termination of LTD benefits, are set forth in detail in the Recommended Findings of Fact section of the R&R and are not duplicated herein.[3] *Id.* at 4-32.

The Magistrate Judge stated Plaintiff, to obtain LTD benefits beyond December 14, 2016, must show by a preponderance of the evidence that she cannot perform one or more essential duties of any occupation for which she is qualified. *Id.* at 36. Based on the Agreed Administrative Record, the Magistrate Judge concluded Plaintiff had shown she could not perform all the essential duties of any occupation for which she is reasonably qualified. *Id*. at 37. The Magistrate Judge summarized the medical evidence she previously set forth in detail in the Recommended Findings of Fact section of the R&R. Dkt. # 33 at 37-39. Specifically, the Magistrate Judge stated as follows:

---

[3] The Court will incorporate the pertinent facts in its discussion of Defendant's objections.

Plaintiff has suffered from severe back pain since at least 2002, when a diagnostic lumbar discogram revealed severe pathology at her L4-5, L5-S1 intervertebral levels as well as less severe degeneration at her L3-4 level. AR 507-08. Plaintiff underwent surgery in 2002 on her L4-S1 levels and improved for a time, but she began to deteriorate in 2004. AR 521, 533-34. By 2007, Plaintiff could not sit in a chair, lie in a bed, or stand for any significant length of time. AR 521.

Plaintiff pursued aggressive surgical treatment with neurosurgeon, Robert Martin, M.D. On March 25, 2008, Dr. Martin performed an extreme interbody fusion at L3-4. AR 787-89. In July 2008, Dr. Martin stated Plaintiff could sit for no more than two hours in a day, stand for no more than two hours per day, and walk for no more than two hours per day. AR 1925. Dr. Martin further stated these limitations are permanent. AR 1925.

Still complaining of pain, Plaintiff next sought treatment with Ralph F. Rashbaum, M.D. Dr. Rashbaum diagnosed Plaintiff with "failed back surgery syndrome" and surgically implanted a spinal cord stimulator. AR 2237. The spinal cord stimulator eventually caused an increase in Plaintiff's symptoms, and Dr. Rashbaum surgically removed it in December 2012. AR 1802-03. Dr. Rashbaum recommended Plaintiff start long-term use of class II narcotics. In a "long hard conversation," Dr. Rashbaum advised Plaintiff as follows:

[S]he probably does need to try a class II medication. . . . I have told her in the past that she will more than likely always be on some form of pain medication, she wanted to avoid class II if possible. I think we have exhausted every other procedure and modality to try to prevent that. I am referring her now to Dr. Bernstein to see if he can find the right medication mix to help reduce her pain so that she can be more active. She wants to do so much, but is very limited physically. I have also provided her with a prescription for handicap parking placard that she can use. I think she pushes herself so far that she has been in such extreme pain that she is bedridden for 2 to 3 days.

AR 2239.

Plaintiff's care then transitioned to pain management physician Sidney Bernstein, M.D., at the Texas Back Institute. Dr. Bernstein stated Plaintiff could sit, stand, and walk for fifteen to twenty minutes at a time and could not do any of the postures for more than a total of four hours per day. AR 1905.

On February 20, 2011, Hartford management reviewed Plaintiff's claim and noted:

[Plaintiff] continues with chronic lower back and leg pain. Dr. Bernstein is managing her medications and making adjustment to help better control [her] pain. [She] is also

having side effects from the meds and her weight is also of concern. . . . Although Dr. Bernstein notes that [Plaintiff] has the capacity to lift up to 10 lbs. frequently and up to 20 lbs. occasionally and able to frequently fingering and handling, due to chronic intractable pain she is limited to 15-20 minutes sit/stand/walk for no more than 4 hrs/day. Therefore, it is reasonable that [Plaintiff] would be unable to sustain fulltime any occ[upation] activities.

AR 926.

When Dr. Bernstein retired in December 2011, Plaintiff updated Hartford with records from her current pain management physician, Noor Gajraj, M.D. Dr. Gajraj is Board Certified in Pain Management and has treated Plaintiff for more than five years. AR 14. In the most recent Attending Physician's Statement of Disability ("APS") No. 10, dated July 10, 2015, Dr. Gajraj listed Plaintiff's primary diagnosis as lumbar degenerative disc disease and her secondary diagnosis as lumbar radiculopathy. AR 1752-53 (duplicate AR 1783-84). He listed her medications as Dilaudid and Fentanyl and her current subjective symptoms as rightsided low back pain and right leg pain and tenderness. AR 1752. He opined Plaintiff could walk, stand, and sit for fifteen to twenty minutes at a time and for no longer than four hours per day. AR 1753.

The Magistrate Judge considered the opinions of Plaintiff's treating physicians and the supporting evidence of their opinions, such as the surveillance and objective medical records and Defendant's actions over the course of several years. The Magistrate Judge found the treating physicians' opinions reliable and probative, concluding as follows:

Based on the Agreed Administrative Record, Plaintiff has demonstrated by a preponderance of the evidence that she cannot perform the essential duties, which includes the ability to work a full work week, of any occupation for which she qualifies. Plaintiff has shown by a preponderance of the evidence that her disability persisted beyond December 14, 2016.

Dkt. # 33 at 55.

In her *de novo* review, the Magistrate Judge also considered the evidence relied upon by Defendant in justifying its termination of benefits and found no evidence of improvement in Plaintiff's condition since Defendant previously found Plaintiff was unable to sustain full time work

in any occupation. *Id.* The Magistrate Judge concluded it was improper for Defendant to cease Plaintiff's LTD benefits, and Plaintiff is entitled to the reinstatement of her LTD benefits beginning December 15, 2016. *Id.* Thus, the Magistrate Judge recommended Plaintiff's Motion for Judgment on the Record be granted and Defendant's Cross-Motion for Judgment on the Record be denied.

The Magistrate Judge also considered whether pre-judgment interest, costs, and attorney's fees should be awarded as requested by Plaintiff. The Magistrate Judge found Plaintiff is entitled to receive LTD benefits from December 15, 2016, and to recover pre-judgment interest on those unpaid benefits. *Id.* at 56. She also found the circumstances support an award to Plaintiff for attorney's fees and costs, in addition to the benefits amount owed to her under the Policy. *Id.* at 59.

However, rather than specifically recommend an award of fees and costs, the Magistrate Judge recommended that Plaintiff be directed to file, within twenty days from the date of any Order adopting the R&R, a motion for pre-judgment interest, costs, and attorney's fees. *Id.* The R&R specifies that any such motion must be legally and factually supported and that Defendant shall file a response.

## OBJECTIONS

Defendant filed three main objections to the Report and Recommendation ("R&R"), the first and second of which the Court considers first in its *de novo* review of the R&R. In the first main objection, Defendant asserts the R&R fails to follow appropriate ERISA law and the Policy language, which leads to erroneous findings of fact and legal conclusions. This objection has six specific sub-arguments, which the Court lists herein in the order it will consider them: (1) the R&R errs in misstating the Policy's definition of "disability;" (2) the R&R improperly relies on outdated records for its conclusion on present disability; (3) the R&R errs in applying the "treating physician

7

rule" and giving deference to Plaintiff's treating physicians over independent reviewing physicians; (4) the R&R wrongly relies on Plaintiff's subjective complaints as opposed to objective evidence; (5) the R&R erroneously uses Plaintiff's attorney's arguments in briefing as findings; and (6) the R&R "cherry-picks" from the AR instead of reconciling the evidence as the plan administrator must do in its benefits decision. Defendant also argues the R&R improperly shifts the burden to Defendant to show evidence of improvement.

In its related second main objection, Defendant asserts the R&R relies on law outside the Fifth Circuit that is contrary to the way the Fifth Circuit will decide the issues. Specifically, Defendant argues the alleged "factual and legal errors lead the R&R to look to a district court case within the Ninth Circuit that does not represent how the Fifth Circuit views these issues." Dkt. # 37 at 2. According to Defendant, the Magistrate Judge does not address the case law cited by Defendant. Dkt. # 37 at 20. Finally, in its third main objection, Defendant asserts the R&R purports to award Plaintiff attorney's fees without any motion practice and based on erroneous factual and legal conclusions.

In her response, Plaintiff emphasizes the standard in this case is *de novo* review as opposed to abuse of discretion.[4] Plaintiff argues Defendant's objections revisit a number of contested fact

---

[4] Under an abuse of discretion standard, if the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail. *Arrington v. Unum Life Ins. Co. of Am.*, No. 1:14-CV-549, 2016 WL 7115970, at *7 (E.D. Tex. Sept. 13, 2016), *report and recommendation adopted*, No. 1:14-CV-00549, 2016 WL 7104040 (E.D. Tex. Dec. 6, 2016) (citing, among other cases, *Bistany v. Reliance Standard Life Ins. Co.*, 55 F. Supp. 3d 956, 962 (S.D. Tex. 2014) (quoting *Ellis v. Liberty Life Assurance Co. of Bos.,* 394 F.3d 262, 273 (5th Cir. 2004))). Substantial evidence is "merely 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Arrington*, 2016 WL 7115970, at *7 (quoting *Bistany*, 55 F. Supp. 3d at 962 (quoting *McCorkle v. Metro Life ins. Co.,* 757 F.3d 452, 457 (5th Cir. 2014))). The court's review needs only assure that the administrator's decision falls somewhere on a continuum of reasonableness, even if on the low end,

issues raised in the underlying briefing on which the Magistrate Judge found Plaintiff's evidence to be more compelling. Rather than "cherry pick" the Agreed Administrative Record, Plaintiff asserts the Magistrate Judge explained in detail why she found some evidence more probative and some evidence less probative. Dkt. # 38 at 12. Even though the Magistrate Judge indicated an award of attorney's fees would be appropriate, Plaintiff points out the R&R did not award attorney's fees and costs to Plaintiff but specifically recommended the parties be ordered to further brief the issue.

## THE UNDERSIGNED'S
### *DE NOVO* REVIEW OF R&R

**Standard and scope of *de novo* review of this ERISA case**

Although the parties have agreed the Court's evaluation of this ERISA case should be subject to *Firestone's* default *de novo* review, the parties' arguments reflect a fundamental disagreement as to what such a review entails. The Court provides the following background as to why the Magistrate Judge found it necessary to reference law from outside this circuit in determining what such a review entails. A little over one year ago, a majority of the *en banc* Fifth Circuit Court of Appeals overruled its precedent, *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991), which held challenges to an administrator's factual determination that a beneficiary is not eligible must be reviewed under the same abuse of discretion standard that applies when plans have delegated discretion. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (en banc) ("*Ariana M. I*").

In overruling *Pierre*, the Fifth Circuit became aligned with seven other courts of appeals which long ago determined the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S.

---

and need not be particularly complex or technical. *Id.*

101 (1989) mandated that courts apply a *de novo* standard of review to all ERISA benefits determinations regardless of whether the denials under review were legally-based plan interpretations or factually-based eligibility determinations, unless an administrator has discretionary authority. *See Ariana M. I*, 884 F.3d at 248, 255. In *Ariana M. I*, the Fifth Circuit vacated the district court's order granting summary judgment and remanded for *de novo* review. *Id.* at 256.

Like the Magistrate Judge, the Court has been unable to locate any relevant cases from within the Fifth Circuit that elaborate on the *de novo* standard of review or that apply such a review in facts similar to this case. In its objections, Defendant relies on the trial court's decision in *Ariana M.* following remand, wherein the court stated *de novo* review "requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms." *Ariana M. v. Humana Health Plan of Texas, Inc.*, No. H-14-3206, 2018 WL 4384162, at *12 (S.D. Tex. Sept. 14, 2018) ("*Ariana M. II*"). Although Defendant agrees no deference is accorded to the administrator's decision, relying on this language in *Ariana M. II*, Defendant argues nothing about *de novo* review changes the "long-standing legal principles for administration of an ERISA claim under the terms of the plan." Dkt. # 37 at 1.

On the other hand, in her response, Plaintiff argues *de novo* review requires the Court to independently weigh the facts and opinions in the administrative record to determine whether the claimant has met her burden of showing she is disabled with the meaning of the policy. Dkt. # 38 at 1-2 (citing *Richards v. Hewlett-Packard Corp.*, 592 F.3d 232, 239 (1st Cir. 2010)). Plaintiff asserts what happened before the plan administrator is irrelevant. Dkt. # 38 at 1 (citing *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007)). According to Plaintiff, this is what the Magistrate Judge did: "In order to conduct the Trial on the Papers in this case, [she] reviewed

151 pages of briefing by the parties, a 2,266 page Agreed Record, and held a 2-hour oral hearing. Her Report and Recommendation (R&R) includes over 300 factual citations to the Agreed Record." Dkt. # 38 at 2.

In its order on remand following *Ariana M. I*, the district court in *Ariana M. II* reviewed the administrative record *de novo* to determine whether Humana wrongfully denied Ariana M. benefits. 2018 WL 4384162, at * 12. The court stated *de novo* review requires that the court apply the same standard as the plan administrator in deciding whether the benefits were owed under the plan's terms. *Id.* (citing *Hightower v. Tex. Hosp. Ass'n*, 65 F.3d 443, 447 (5th Cir. 1995)). However, the Fifth Circuit in *Hightower* simply stated that *de novo* review requires that the appellate court apply the same standard as the district court when deciding whether summary judgment was properly granted.[5] The question remains whether the district court's *de novo* review of a plan administrator's decision is the same as an appellate court's *de novo* review of a district court's grant of summary judgment.

To answer this question, the Magistrate Judge referenced cases from other circuits, specifically noting she had not located post-*Ariana M. I* cases similar to this one from within this

_____

[5] The Court also notes *Hightower* was a class action brought by hospital employees against a hospital foundation to recoup surplus funds created when the foundation terminated the hospital retirement plan. 65 F.3d at 446. The district court granted partial summary judgment for the employees on the grounds that the foundation maintained the plan, and therefore, any termination of the plan was subject to the provisions of ERISA. *Id*. On appeal, the Fifth Circuit affirmed in part and reversed in part. *Id.*

The Fifth Circuit addressed the definition of a governmental plan under ERISA and concluded the exemption of governmental plans is addressed in three parts of the ERISA statute. *Cliburn v. Police Jury Ass'n of Louisiana, Inc*., 982 F. Supp. 386, 387 (M.D. La. 1997). The Fifth Circuit held that once the foundation executed the lease agreement with the county, "assumed control of the pension plan and became the employer of the Hospital's employees, the governmental exemption Title IV no longer applied, and the Plan was subject to Title IV." *Id*. at 450-51. "On the other hand, because the County established the Plan, the Plan remained exempt under Title I even after the County ceased to 'maintain' the Plan by transferring control to the Foundation." *Id*. at 451.

circuit which provide guidance as to the Court's task under the *de novo* review standard. Dkt. # 33 at 34, n. 18. In the absence of specific law from the Fifth Circuit on this issue, the Court finds it appropriate to consider law from other circuits for guidance on *de novo* review.

The R&R referenced law from the First, Sixth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals, all of which are consistent in their treatment of *de novo* review in the ERISA context. Under the *de novo* standard of review, the court's task "is to determine whether the administrator made a correct decision." *Niles v. Am. Airlines, Inc.*, 269 Fed. Appx. 827, 832 (10th Cir. 2008) (quoting *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 808–09 (6th Cir.2002)). According to the Magistrate Judge, Defendant's decision to terminate benefits is not afforded deference or a presumption of correctness. Dkt. # 33 at 34 (citing *Niles*, 269 Fed. Appx. at 832). As set forth in the R&R, the court must, in a *de novo* review, "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy." Dkt. # 33 at 34-35 (quoting *Richards*, 592 F.3d at 239).

The R&R noted the burden of proof is on the plaintiff to prove she is disabled even when a court reviews a plan administrator's decision under the *de novo* standard. Dkt. # 33 at 35 (citing *Oliver v. Aetna Life Ins. Co.*, 613 Fed. Appx. 892, 896 (11th Cir. 2015) ("[T]he plaintiff bears the burden to prove that he is disabled.")). The R&R further noted the burden of proof does not change because a plaintiff qualified at one point in time for disability benefits and the benefits were later terminated when she no longer qualified. Dkt. # 33 at 35 (citing *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294-96 (9th Cir. 2010) ("the burden of proof continues to lie with the plaintiff when disability benefits are terminated after an initial grant")). As urged by Defendant in its cross motion

for judgment on the record, the Magistrate Judge stated the plaintiff bears the burden of proving by a preponderance of the evidence that she is disabled. Dkt. # 33 at 35 (citing *Gilewski v. Provident Life & Accident Ins. Co.*, 683 Fed. Appx. 399, 406 (6th Cir. 2017) ("[Plaintiff] must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the policy."); *see also Dewsnup v. Unum Life Ins. Co. of Am.*, No. 2:17-CV-00126-TC, 2018 WL 6478886, at *7 (D. Utah Dec. 10, 2018) (citing *Niles*, 269 Fed. Appx. at 833) ("To prevail, a claimant's entitlement to benefits must be supported by a preponderance of the evidence based on the court's review of the record.")).

Applying the *de novo* review standard to Plaintiff, the Magistrate Judge did not give deference to Defendant's decision. Rather, she evaluated the persuasiveness of each side's case to determine if Plaintiff has adequately established that she is disabled under the Policy. Dkt. # 33 at 36-37 (citing *Houghton v. Hartford Life & Accident Ins. Co.*, No. C16-1186RAJ, 2017 WL 3839577, at *4 (W.D. Wash. Aug. 31, 2017) (citing *Oldoerp v. Wells Fargo & Co. Long Term Disability Plan*, 12 F. Supp. 3d 1237, 1251 (N.D. Cal. 2014)))).

With these standards in mind, the Court considers the substantive arguments raised by Defendant in its objections.

**Discussion of the first and second main objections**

As previously stated, in its first main objection, Defendant argues the R&R fails to follow long-standing ERISA principles and Policy language, asserting the following specific arguments: (1) the R&R errs in misstating the Policy's definition of "disability;" (2) the R&R improperly relies on outdated records for its conclusion on present disability; (3) the R&R errs in applying the treating physician rule and giving deference to Plaintiff's treating physicians over independent reviewing

physicians; (4) the R&R wrongly relies on Plaintiff's subjective complaints as opposed to objective evidence; (5) the R&R erroneously uses Plaintiff's attorney's arguments in briefing as findings; and (6) the R&R "cherry-picks" from the AR instead of reconciling the evidence as the plan administrator must do in its benefits decision. The Court considers each specific argument below. In its discussion on the third sub-argument regarding the treating physician rule, the Court will also address Defendant's second main objection, that the R&R improperly relies on law outside the Fifth Circuit.

### *Whether the R&R misstates the Policy's definition of "disability"*

In its first sub-argument, Defendant maintains the R&R makes findings that imply a diagnosis is the same as "disability." Dkt. # 37 at 14. Defendant argues a diagnosis is not a condition of coverage under the Policy; rather, the issue is whether Plaintiff is disabled as the term is defined in the Policy.

As set forth in the Recommended Findings of Fact section of the R&R, under the Policy, a claimant is entitled to LTD benefits if she is "disabled" throughout and beyond the "Elimination Period" (the first 90 days of disability). Dkt. #33 at 4 (citing Dkt. # 17-1 at 25-26). A claimant is "disabled" during the first 24 months if she is "prevented from performing one or more of the Essential Duties" of her "Own Occupation." *Id*. The Policy changes its definition of disability after 24 months' benefits have been paid. Thereafter, a claimant is "disabled" if she is "prevented from performing one or more of the Essential Duties" of "Any Occupation." *Id*. "Any Occupation" means any occupation for which the claimant is qualified by education, training or experience and that has an earnings potential greater than the lesser of the product of the claimant's "Indexed Pre-disability earnings and the Benefit Percentage;" or "the Maximum Monthly Benefit." Dkt. #33 at 4 (citing Dkt.

# 17-1 at 25).

> "Essential Duty" means a duty that:
>
> 1) is substantial, not incidental;
>
> 2) is fundamental or inherent to the occupation, and
>
> 3) cannot be reasonably omitted or changed.

Dkt. #33 at 4 (citing Dkt. # 17-1 at 26).

Contrary to Defendant's assertion, the R&R correctly states the definition of "disabled" and correctly applies that definition to the facts in the record. Noting Plaintiff's LTD Claim was effective April 24, 2008, the Magistrate Judge correctly stated the definition of "disabled" changed under the Policy on April 24, 2010, from "Own Occupation" to "Any Occupation." Dkt. #33 at 4 (citing AR 1030-31). Thus, according to the Magistrate Judge, Plaintiff was only entitled to LTD benefits beyond April 24, 2010 if she was unable to perform the essential duties of any occupation. *Id.* The Magistrate Judge also noted a claimant's ability to work the number of hours in her regularly scheduled workweek is an "Essential Duty." Dkt. #33 at 4 (citing Dkt. # 17-1 at 26).

After identifying the proper definition of disability, the R&R discusses in detail the evidence establishing that Plaintiff cannot work a regular workweek. According to Defendant, the issue is whether there are supported physical and mental limitations for Plaintiff, "and whether in the context of those limitations, [Plaintiff] is rendered incapable of performing job duties of any occupation that meet the earnings standard, as defined by the [Policy]." Dkt. # 37 at 15. Defendant further argues the Magistrate Judge's focus on the earnings requirement reduces the "import of the employability analyses" Defendant conducted. *Id.* Defendant reasons as follows:

The analysis married the claimant's physical capabilities, education, training, work history, and the definition's earnings requirement. AR 1926-33 (EAR), 1508-19 (First EAR Addendum), 1323-39 (Second EAR Addendum). The fact that Hartford's last employability analysis (AR 1323-39) identified 'high-paying' jobs should not overshadow the fact that the jobs also suited Pike's overall functionality, including her physical and mental capacity for work based on the opinions of two treating physicians and two independent reviewing physicians.

*Id.*

In the Recommended Findings of Fact section of the R&R, the Magistrate Judge set forth the information Defendant began to gather in October 2009 regarding Plaintiff's functional capacity. Dkt. # 33 at 11-12. As requested, Plaintiff's then-treating orthopedic surgeon, Dr. Rashbaum, provided APS No. 4, which stated Plaintiff could not reach or perform fingering or handling. He provided no restrictions or limitations for sitting, standing, or walking. Dkt. # 33 at 11 (citing AR 1916-17); *see also id.* at 7. Defendant asked Dr. Rashbaum to specify his opinion on Plaintiff's ability to sit, stand, and walk. AR 944-45. Dr. Rashbaum sent an APS dated March 12, 2010, but it also provided no specific assessment of restrictive limitations, and instead annotated "Patient Unable to Work." AR 1914-15 ("APS No. 5").

Dr. Rashbaum later provided an APS dated April 20, 2010. AR 1909-10 ("APS No. 6"). APS No. 6 explained that Plaintiff could frequently reach at desk level and lift/carry up to ten pounds, but sitting, standing, or walking were all limited to fifteen or twenty minutes at a time, up to four hours total. AR 1909-10, 1912-13. On April 20, 2010, Dr. Rashbaum's office clarified that Plaintiff's functional capacity was limited to four hours a day.

On April 22, 2010, Defendant conducted an employability analysis (the first "EAR"), which evaluated whether there were any occupations Plaintiff was capable of performing based upon her functional capabilities as specified by Dr. Rashbaum in APS No. 6, education (Bachelor of Science

in microbiology), training, and work history, and which would meet the earnings requirement in the Policy. Dkt. # 33 at 11-12 (citing AP 938-40, 1926-33). The EAR identified no occupations. Dkt. # 33 at 12 (citing AR 940, 1927).

On August 30, 2016, Defendant advised Plaintiff she was required to attend an independent medical examination ("IME") to clarify her current maximum level of functional ability. Dkt. # 33 at 21 (citing AR 895-96, 995-96). Board Certified Physical Medicine and Rehabilitation physician, John Sklar, M.D., examined Plaintiff in October 2016 prior to Defendant's initial decision to terminate benefits. *Id.* at 22, 48 (citing AR 1528-30). Defendant asked Dr. Sklar whether, given the totality of the medical evidence and other information provided, he felt there are any restrictions or limitations as to Plaintiff's activity, and if so, would she be capable of performing activity up to forty hours per week with these restrictions. Dkt. # 33 at 22-23 (citing AR 1530).

In response, Dr. Sklar opined Plaintiff could work a light or sedentary occupation up to forty hours a week with the following restrictions and limitations based on her chronic pain condition and "[t]o accommodate her pain:" ability to change positions on an as needed basis with up to six hours per day of sitting and the rest of the day spent in a combination of standing and walking for up to two hours; occasionally lifting up to twenty pounds; and no repetitive bending or twisting. Dkt. # 33 at 23 (citing AR 1530). Dr. Sklar further stated as follows:

> This claimant has pain. Pain is clearly not a reason not to work and the evidence based medical literature suggests that persons with chronic pain are actually well served by engaging in normal life activities especially work.
>
> Work then is not only reasonable here it would be a part of the claimant's reasonable treatment plan to treat her pain complaints. I make these recommendations then in the claimant's best interest. It would be predicted that if she continues on an off-work status her situation will continue to deteriorate and returning to work is the one intervention which would actually be expected to stop that deterioration from occurring.

*Id.*

On December 8, 2016, Defendant updated the first EAR using Dr. Sklar's restrictions and limitations in the IME Report. *See* Dkt. # 33 at 24, 53 (citing AR 1508-09 ("First EAR Addendum")). Unlike the first EAR, the First EAR Addendum identified several occupations Plaintiff was well-suited for based on her education, training, and work history, and which met the earnings requirement in the Policy (*i.e.*, quality-control coordinator, administrative assistant, director of research and development, consultant, project direction, executive secretary). AR 1511-12. "Essentially, the First EAR Addendum found Plaintiff could return to her former occupation, or a similar occupation. AR 1508-09; 1513-19 (as one example, the executive secretary or executive administrative assistant occupation identified is described as providing 'high-level administrative support' and also training and supervising lower-level clerical staff)." Dkt. # 33 at 24.

As part of its consideration of Plaintiff's appeal, Defendant obtained a Peer Review Report in July 2017 from Board Certified Physical Medicine and Rehabilitation and Board Certified Pain Medicine physician Dr. Jamie L. Lewis. Dkt. # 33 at 29-30; *see also* AR 1341-54 (Peer Review Report). In his Peer Review Report, Dr. Lewis agreed with Dr. Skylar's IME and found Plaintiff would have the capacity to perform gainful employment on a full time basis with certain "ongoing and indefinite" restrictions. Dkt. # 33 at 50 (citing AR 1349-50). According to Dr. Lewis, although Plaintiff has continued pain complaints, "there are no objective findings that would prevent her ability for sustainable work 40 hours per week." Dkt. # 33 at 50 (citing AR 1350).

In determining whether Plaintiff is capable of performing the essential duties of any occupation, the Magistrate Judge accorded significant weight to the evaluation of Plaintiff by her treating physicians, who have repeatedly concluded Plaintiff can sit, stand, and walk for no more than four hours a day. Dkt. # 33 at 53. According to the Magistrate Judge, these evaluations, along with the evidence regarding Plaintiff's chronic pain and the effects of her pain medication, persuade

the Court Plaintiff could not continuously engage in any occupation for which she would be qualified. *Id.* at 53-54. As will be addressed in more detail below, the Magistrate Judge accorded minimal weight to Dr. Sklar's IME Report, and thus accorded minimal weight to the First EAR Addendum on which it relied. *Id*. at 54 ("Dr. Skylar's conclusions contradicted those of Plaintiff's treating physicians and thus the First EAR Addendum may not have accurately returned jobs that could be performed by Plaintiff.").

Although Defendant's basic assertion that "a diagnosis is not the same as a disability" is correct, Defendant "over-states this rather generalized objection.*" Schowalter v. Prudential Ins. Co. of Am.*, No. 1:13-CV-249-HJW, 2014 WL 5513710, at *8 (S.D. Ohio Oct. 31, 2014). Similar to the court in *Schowalter*, the Court does not agree the Magistrate Judge's extensive analysis "conflated" these concepts. *Id.* For example, the Magistrate Judge emphasized Plaintiff's treating physician, Dr. Gajraj, made clear in his letter dated June 6, 2017 that Plaintiff remained "disabled from competitive work, noting she could not perform more than two to four hours of work per day and would require significant time off-task each day." Dkt. # 33 at 43-44. She also considered, and found unpersuasive, the evidence relied upon by Defendant in support of its assertion that Plaintiff had regained functionality. *Id*. at 45-52. The R&R reflects the Magistrate Judge appropriately recognized that Plaintiff's "functional abilities (despite her conditions) were the main issue." *Schowalter*, 2014 WL 5513710, at *8.

The Court is not convinced, as suggested by Defendant, the Magistrate Judge implied a diagnosis is the same as a "disability" as that term is defined under the Policy. The Court finds Defendant's arguments regarding the R&R's definition of "disability" without merit. The Court next considers whether the R&R improperly relies on outdated records.

***Whether the R&R improperly relies on outdated records for its conclusion on present disability***

In its next sub-argument, Defendant asserts the Magistrate Judge focused on outdated medical records, outdated notations by Defendant in the claims notes, and outdated offers of settlement and payments, asserting past records do not serve to prove present disability. Dkt. # 37 at 9. Among other things, Defendant criticizes the R&R for "lean[ing] heavily on outdated notations in the claims notes by Hartford at the time of Hartford's previous determinations that Pike met the definition of 'disability' under the [Policy] earlier in the administration of the claim." *Id.* at 10. According to Defendant, all of these outdated notations occur before Defendant obtained updated medical records which show Plaintiff was "doing well overall" and "[h]er current medications are effective." *Id.*

According to Defendant, the Magistrate Judge failed to address changes in Plaintiff's current medical records. As one example, Defendant asserts the R&R emphasized Dr. Martin, the neurosurgeon that performed Plaintiff's extreme interbody fusion at L3-4, provided limitations in July 2008 that he opined were permanent. Dkt. # 33 at 37 (citing AR 1925). According to Defendant, Dr. Martin last saw Plaintiff in September 2008, and the IME by Dr. Sklar (discussed in detail below) was conducted in September 2016. Defendant argues as follows:

> It follows that limitations based on an October 2016 physical examination of Pike better reflect Pike's present day functionality. *Compare* Dr. Martin's limitations at AR 1925 (sit for no more than two hours in a day, stand for no more than two hours per day, and walk for no more than two hours per day), *with* the IME's limitations at AR 1530 (sit up to six hours a day, stand up to two hours a day, walk up to two hours a day).

Dkt. # 37 at 9-10.

In conducting a *de novo* review, "the Court must resolve questions of material fact, assess expert credibility, and—most critically—weigh the evidence." *Weisner v. Liberty Life Assurance Company of Boston*, 192 F. Supp. 3d 601, 614 (D. Md. 2016) "When reviewing a benefits denial *de novo*, the Court's 'job is to make [its] own independent determination of whether [the claimant] was entitled to the . . . benefits. The correctness, not the reasonableness, of [the] denial of . . . benefits is [the Court's] only concern. . . .'" *Mantica v. Unum Life Ins. Co. of Am.*, No. CV RDB-18-0632, 2019 WL 1129438, at *7 (D. Md. Mar. 12, 2019) (quoting *Weisner*, 192 F. Supp. 3d at 613 (quoting *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819 (4th Cir. 2013))). As previously noted and as understood by the Magistrate Judge, "[t]he *de novo* standard of review allows the court to examine all of the evidence in the record and decide whether or not the Plaintiff is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits." *Gluth v. Fed. Home Loan Mortg. Corp. Long–Term Disability Plan*, Civ. No. 1:11–cv–1126, 2013 WL 246897, at *4 (E.D. Va. Jan. 17, 2013) *aff'd*, 548 Fed. Appx. 73 (4th Cir.2013) (mem.).

Here, the Magistrate Judge considered in detail the evidence in the Agreed Administrative Record and specifically the evidence both supporting and undercutting Plaintiff's claim for continued LTD benefits. Some of the evidence from Plaintiff's treating physicians (whose opinions she found reliable and probative) pre-dates Defendant's termination of benefits, but that does not necessarily make it less probative of Plaintiff's present condition. As noted by the Magistrate Judge, there is evidence in the Agreed Administrative Record indicating Plaintiff's functional impairments persisted beyond December 14, 2016. Dkt. # 33 at 39.

Specifically, the Magistrate Judge noted there are numerous indications from Plaintiff's physicians, and from Defendant's notations, that improvement is not likely with Plaintiff's condition.

*See*, *e.g.*, AR 1925 (Dr. Martin stating in 2008 the limitations are permanent); AR 955 (note from September 21, 2009 that there was still pain that could be residual damage to the nerves from the hardware hitting the nerve or the original injury and further noting if it was nerve damage it could take 12-18 months to resolve "**if at all**") (emphasis added in R&R); AR 956 ("Went to Texas Back Institute on 06/01/2009 and revealed she had **permanent nerve damage** from the screws.") (emphasis added in R&R); AR 963-64; 2215-2218 (July 16, 2009 sensory nerve conduction study) (revealing "reduced recruitment and an increased proportion of high amplitude long duration MUAP's in the bilateral L5 myotomes"); AR 922 (June 2011 notation by Defendant that due to her medical history of multiple failed back surgeries and her continued need to take class II medications, "it was likely [Plaintiff] would be unable to participate in any type of work activity on a full time basis" and also noting Plaintiff's level of medication and need to be "bedridden for multiple days at a time would impact even limited activity and would be unable to sustain full time work").

According to Plaintiff, evidence of "permanent" limitations in 2008 and "permanent" nerve damages in 2009 is probative that these conditions continued to exist in 2016 when Defendant terminated Plaintiff's LTD benefits. The Court agrees. Additionally, the Magistrate Judge did not limit her discussion to evidence pre-dating the termination. For example, in updated records from Plaintiff's pain management physician, Dr. Gajraj, for six office visits between February 17, 2015, and May 6, 2016, Dr. Gajraj wrote that "[Plaintiff] is taking her medication as prescribed without significant side-effects and is gaining benefit in terms of analgesia and increased function." Dkt. # 33 at 18 (citing AR 1742-46, 1749). However, each record also noted Plaintiff's chief complaint remained "right-sided low back pain and right leg pain." *Id.*

In its objections, Defendant focuses on Dr. Gajraj's statement in each record that Plaintiff was taking her "medication as prescribed without significant side-effects and is gaining benefit in terms of analgesia and increased function." Defendant further asserts the most recent May 6, 2016 record states Plaintiff "is doing well overall" and "[h]er current medications are effective." Defendant argues these statements render any claims notations prior to Defendant's receipt of Dr. Gajraj's records in June 2016 irrelevant to Plaintiff's "present-day disability." Dkt. # 37 at 15. According to Defendant, these 2015 and 2016 records clearly provided Defendant with more recent information on which to base its decision.

Before addressing Defendant's separate argument regarding "outdated notations" in its claims notes, the Court notes it does not find Dr. Gajraj's statements that Plaintiff was "gaining benefit in terms of analgesia and increased function" as determinative as Defendant. Nor do these records render any claims notations prior to Defendant's receipt of those records irrelevant to the Court's *de novo* review. First, as noted by the Magistrate Judge, Dr. Gajraj's assessment in each record was lumbar degenerative disease/radiculopathy. Dkt. # 33 at 19. During this time, Dr. Gajraj also obtained an objective medical test, a Sudoscan on May 14, 2015, to detect peripheral neuropathy (damage to the peripheral nerves). *Id.* (citing AR 1747-48 (Sudoscan Report)). Plaintiff's Sudoscan found possible early signs of peripheral autonomic neuropathy.[6] Dkt. # 33 at 19 (citing AR 1747).

Importantly, with her appeal of the December 15, 2016 decision to terminate LTD benefits, Plaintiff's counsel submitted to Defendant a letter from Dr. Gajraj dated June 6, 2017. In this letter,

---

[6] Defendant also received records from Plaintiff's treating gastroenterologist, David Park, M.D., for office visits in April 2015 and May 2016. AR 1633-59. On May 10, 2016, Plaintiff reported she was still on pain medications for her chronic pain. AR 1633. Plaintiff also reported symptoms of back and joint pain. AR 1634, 1641.

Dr. Gajraj states as follows:

> I am a Board Certified Pain Management doctor and have been [Plaintiff's] treating physician or more than five years. I am very familiar with her condition.
>
> [Plaintiff] suffers from chronic pain, secondary to lumbar degenerative disc disease/radiculopathy. Although she is capable of performing limited light tasks, I do not believe she is capable of working in a competitive environment. Even limited physical exertions cause her to require significant down time. If she were to attempt to return to even a sedentary work environment, she would require significant time off-task each day. I believe she could perform no more than 2-4 hours of work per day. She additionally requires the fentanyl patch 100 mcg/hr and Dilaudid simply to achieve limited function. These medications, however can impact cognition and the ability to perform detailed tasks. I consider [Plaintiff] to be disabled from competitive work.

Dkt. # 33 at 28 (citing AR 14). According to Plaintiff's response, Dr. Gajraj's opinion from June 6, 2017 is more than sufficient to support a finding that Plaintiff remains disabled under the Policy.

The Magistrate Judge stated Dr. Gajraj noted Plaintiff is capable of performing limited light tasks; even so, she is not capable of working in a competitive environment, even in a sedentary work environment. Dkt. # 33 at 47 (citing AR 14). The Magistrate Judge noted Plaintiff's treating physicians' relationships with Plaintiff allowed them to personally observe the effects of her diagnoses and assess the credibility of her reports of pain. Dkt. # 33 at 51. Specifically, "Plaintiff's pain management treating physician for over five years, stated in 2017 that Plaintiff suffers from chronic pain, secondary to lumbar degenerative disc disease/radiculopathy and is disabled." *Id.* (citing AR 14).

Additionally, Defendant argues the "outdated notations in the claims notes in the AR rely on [Plaintiff's] subjective reporting, not on objective medical determinations." Dkt. # 37 at 15. According to Defendant's argument, "[p]roper claims administration says that the administrator

should record what the claimant is stating and reporting to the Plan on her claim; but notations of subjective statements by Pike to Hartford does not mean there is 'disability' under the Plan." *Id.*

A specific "outdated" notation the Magistrate Judge relied upon was from April 2010, wherein Defendant noted Plaintiff had chronic pain which radiated down the leg which may be due to nerve damage. Dkt. # 33 at 12 (citing AR 937). It was noted Plaintiff had been referred to Dr. Bernstein (Plaintiff's first pain management physician) with chronic low back pain and leg pain. According to the Recommended Findings of Fact of the Magistrate Judge, Defendant determined as follows:

> Based on the history of the clmt's multiple back surgeries, continued treatment for severe back pain and in to her legs (including class II meds and spinal stimulator) it is likely clmt would be unable to participate in any type of work activity on a full time basis. Clmt's level of medication and need to be bed-ridden for multiple days at a time would impact even limited activity and would be unable to sustain full time work.

Dkt. # 33 at 12 (quoting AR 941).

Not only did the Magistrate Judge consider Defendant's own notations, she also considered that between November 2010 and July 2015, Plaintiff routinely updated Defendant regarding the status of her pain management with Dr. Bernstein and her new pain management physician, Dr. Gajraj, following Dr. Bernstein's retirement. Dkt. # 33 at 13. In the most recent APS No. 10, dated July 10, 2015, Dr. Gajraj listed Plaintiff's primary diagnosis as lumbar degenerative disc disease and her secondary diagnosis as lumbar radiculopathy. *Id.* (citing AR 1752-53). Dr. Gajraj listed Plaintiff's medications as Dilaudid and Fentanyl and her current subjective symptoms as right sided low back pain and right leg pain and tenderness. *Id.* (citing AR 1752). He opined Plaintiff could walk, stand, and sit for fifteen to twenty minutes at a time and for no longer than four hours per day.

*Id.* (citing AR 1753). Dr. Gajraj also stated he did not believe Plaintiff was competent to direct the use of her claim proceeds.[7] *Id.* (citing AR 1753).

As set forth by the Magistrate Judge, on February 20, 2011, Hartford management reviewed Plaintiff's claim and noted:

> [Plaintiff] continues with chronic lower back and leg pain. Dr. Bernstein is managing her medications and making adjustment to help better control [her] pain. [She] is also having side effects from the meds and her weight is also of concern. . . . Although Dr. Bernstein notes that [Plaintiff] has the capacity to lift up to 10 lbs. frequently and up to 20 lbs. occasionally and able to frequently fingering and handling, due to chronic intractable pain she is limited to 15-20 minutes sit/stand/walk for no more than 4 hrs/day. Therefore, it is reasonable that [Plaintiff] would be unable to sustain fulltime any occ[upation] activities.

Dkt. # 33 at 14 (quoting AR 926).

On June 4, 2011, Defendant determined that, due to her medical history of multiple failed back surgeries and her continued need to take class II medications, "it was likely [Plaintiff] would be unable to participate in any type of work activity on a full time basis." *Id.* (citing AR 922). It was further noted that Plaintiff's level of medication and need to be "bed-ridden for multiple days at a time would impact even limited activity and would be unable to sustain full time work." *Id.* (citing AR 922).

The Court does not find the Magistrate Judge's reliance on these notations improper. Nor

---

[7] In its reply to Plaintiff's response to its objections, Defendant asserts the R&R notes that in APS Nos. 9 and 10 Dr. Gajraj checked "No" on whether Plaintiff is competent to direct the use of her proceeds but fails to note that in APS Nos. 9 and 10 he also checked "No" on whether Plaintiff has psychiatric/cognitive impairment. Dkt. # 40 at 4, n.3. According to Defendant, this undercuts Plaintiff's claim that Defendant's "multiple determinations over time that [Plaintiff] was disabled, in part, due to her use of class II medications, which she continues to use, suggests that the class II medications would continue to impact [Plaintiff's] ability to work." *Id.* (citing Dkt. # 38 at 5).

does the Court agree with Defendant that all the notations only reflect Plaintiff's subjective reporting and do not reflect objective determinations. The notations are especially relevant to how, at least at one time, Defendant viewed Plaintiff's use of class II medications and how that would impact even limited activity and her ability to sustain full time work.

Defendant argues a "fatal problem with the R&R's use and analysis of outdated records to prove disability is that it shifts the burden of proof." *Id.* at 7. According to Defendant, although the R&R "pays lip service" to the burden of proof (Dkt. # 33 at 35-36), "its findings impermissibly shift the burden of proof to Hartford to show that Pike is no longer disabled." Dkt. # 37 at 7 (citing Dkt. # 33 at 39-40 ("Hartford previously determined Plaintiff could not perform the essential duties of any occupation after the definition of 'disabled' changed on April 29, 2010. . . . Here, Hartford paid LTD benefits under the more restrictive definition of 'disabled' for over six years, until December 14, 2016; thus, the Court would expect to see evidence of improvement in the record."); *id* at 55 ("The Court, having considered all of the evidence relied upon by Hartford in justifying its termination of benefits, finds no evidence of improvement in Plaintiff's condition since Hartford previously found she was unable to sustain full time work in any occupation.")). Defendant argues as follows:

> Under the R&R's rationale and findings, once disabled and once benefits have been paid, an administrator cannot cease payments *unless it can show that the claimant has improved*. This is contrary to what the Fifth Circuit has said about the burden of proof on disability claims under the 'any occupation' standard. *Hilton v. Ashland Oil Inc.*, 103 F.3d 124 (5th Cir. 1996) (unpublished) (abuse of discretion standard of review).

Dkt. # 37 at 8 (emphasis in original).

In her discussion, the Magistrate Judge agreed with Defendant's argument that an

administrator's past payment of benefits does not "operate forever as an estoppel so that an insurer can never change its mind." *Id.* However, the Magistrate Judge stated Defendant failed to acknowledge that past payment of benefits can be a consideration in the Court's *de novo* review. Dkt. # 33 at 39-40 (citing *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1297 (9th Cir. 2010)[8] (quoting *McOsker v. Paul Revere Life Insurance Co.,* 279 F.3d 586, 589 (8th Cir.2002))). The Magistrate Judge noted in *McOsker*, an abuse of discretion case, the Eighth Circuit stated that paying benefits does not operate "forever as an estoppel so that an insurer can never change its mind; **but unless information available to an insurer alters in some significant way, the previous payment**

---

[8] Contrary to Defendant's assertion, the Magistrate Judge did not fail to consider any of the cases it relied upon in its cross motion for judgment on the record. *Muniz* was a case relied upon by Defendant and specifically referenced by the Magistrate Judge. *See* Dkt. # 33 at 39. The Magistrate Judge also mentioned *Muniz*, and two other cases cited by Defendant in its cross motion, in her discussion of the burden of proof. *See id.* at 35 (citing, among other cases, *Oliver v. Aetna Life Ins. Co.*, 613 Fed. Appx. 892, 896 (11th Cir. 2015) ("[T]he plaintiff bears the burden to prove that he is disabled."); *Gilewski v. Provident Life & Accident Ins. Co.*, 683 Fed. Appx. 399, 406 (6th Cir. 2017) ("[Plaintiff] must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined in the policy.")).

Although the Magistrate Judge did not specifically address the court's decision in *Hoffmann v. Life Ins. Co. of N. Am.*, No. EDCV 13-2011-JGB, 2014 WL 7525482 (C.D. Cal. Dec. 29, 2014), another case relied upon by Defendant, she did mention the case in discussing why she was not convinced the procedural irregularities alleged by Plaintiff are relevant on *de novo* review. *See* Dkt. # 33 at 42, n. 21 (citing *Haber v. Reliance Standard Life Ins. Co.*, No. CV149566MWFMANX, 2016 WL 4154917, at *8 (C.D. Cal. Aug. 4, 2016) (citing *Hoffmann*, 2014 WL 7525482, at *6 ("Plaintiff makes numerous and wide-ranging arguments alleging improprieties and procedural mistakes by Defendants [including failure to have plaintiff undergo an independent medical examination]. These would be more relevant if the Court were conducting an abuse of discretion analysis. However, as the Court is conducting a *de novo* review, the focus is on the adequacy of Plaintiff's evidence to support his disability")))). The court in *Hoffman*, in conducting a *de novo* review, focused on the adequacy of the plaintiff's evidence and concluded the plaintiff had not adequately established a diagnosis of bipolar II disorder as required for further benefits under the relevant plan. 2014 WL 7525482, at *6. Here, the Magistrate Judge also focused on the adequacy of Plaintiff's evidence to support her disability and concluded Plaintiff has shown by a preponderance of the evidence that her disability persisted beyond December 14, 2016.

**of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments**." Dkt. # 33 at 40 (quoting *McOsker*, 279 F.3d at 589 (emphasis added in R&R)).

The Magistrate Judge also cited *Saffron v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008), wherein the Ninth Circuit Court of Appeals stated "MetLife had been paying Saffon long-term disability benefits for a year, which suggests that she was already disabled." Dkt. # 33 at 40 (quoting *Saffron*, 522 F.3d at 871). The court opined that to find the plaintiff no longer disabled, "one would expect the MRIs to show an *improvement,* not a lack of degeneration." *Id.* (emphasis in original). According to the Magistrate Judge, this requirement imposes no burden of proof on the defendant, but is instead a logical inference that the court may make (in its *de novo* review) based on a specific set of facts. Dkt. # 33 at 40 (citing *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp.3d 1068, 1079 (W.D. Wash. 2018) (citing *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program*, 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010)))).

In its *de novo* review of the R&R, the Court has located Sixth Circuit cases involving an abuse of discretion standard which stand for the proposition that "it is reasonable to require a plan administrator who determines that a participant meets the definition of 'disabled,' then reverses course and declares that same participant 'not disabled' to have a *reason* for the change; to do otherwise would be the very definition of arbitrary and capricious." *Morris v. Am. Elec. Power LTD Plan,* 399 Fed. Appx. 978, 984 (6th Cir.2010) (also stating "it does not follow, however, either logically or from our decision in *Kramer,* that the explanation [for the termination of benefits] must be that the plan administrator has acquired new evidence demonstrating that the participant's medical condition has improved"); *see also Kramer v. Paul Revere Life Ins. Co.,* 571 F.3d 499, 507 (6th

Cir.2009). Both cases involved terminations under the same standard by which the claimant's disability was evaluated. Here, the Court finds Defendant's previous payment of benefits under the same definition of "disability" is a relevant consideration in the Court's *de novo* review.

As noted above, this language does not impose a burden of proof on a defendant, but rather demonstrates a logical inference that a court may make based on a specific set of facts. As set forth and applied by the Magistrate Judge, in reviewing the administrative record, the Court evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate. Plaintiff, however, carries the ultimate burden to prove that she was disabled under the terms of the Policy. *See Schramm*, 718 F. Supp. 2d at 1162.

Defendant relies on *Hilton v. Ashland Oil Inc*., 103 F.3d 124, 1996 WL 731358 (5th Cir. 1996) (unpublished), asserting the Magistrate Judge shifted the burden of proof from Plaintiff to Defendant despite her "lip service" to the burden of proof. *See* Dkt. # 37 at 7. *Hilton* is easily distinguishable. In that abuse of discretion case, the Fifth Circuit Court of Appeals reversed the judgment of the district court to the extent it held the plan administrator abused its discretion in concluding the claimant had not shown he came within the plan's definition of disability. 1996 WL 731358, *1.

According to the appellate court, despite it being the claimant's burden of supporting his asserted disability with medical evidence, Prudential attempted to obtain medical information from the claimant's physician and vocational reports regarding the claimant's workers' compensation claim. *Id.* at *4. "Scant as it was," Prudential was able to obtain some information which indicated, among other things, "[t]here was about an 80 percent chance that we can get [Hilton] over this without surgery." *Id.* Although Prudential attempted to get specific information from the claimant's

treating physician, "the claims administrator received no additional information from that physician or from Hilton." *Id*.

"Having nothing before her but the meager results of her own voluntary efforts to do Hilton's evidence-gathering job for him, the claims administrator recommended denial of Hilton's claim for failure to meet his burden of supplying acceptable evidence in support of the Plan's 'any occupation' definition of disability." *Id*. "That recommendation was based on Prudential's inference, from the little evidence that was available, of the 'possibility' of Hilton's being retained for sedentary work, coupled with the levels of his education and prior work experience, and the dearth of medical evidence that he could not perform or be re-trained to perform the work required for any occupation." *Id.*

On appeal, the Fifth Circuit noted the plain wording of the plan "expressly placed on Hilton-as the party claiming to be disabled, and thus entitled to benefits-the burden of proving (i.e., submitting credible and probative medical evidence *satisfactory to the Plan* ), that he was in fact disabled to that extent." *Id.* at *5 (emphasis in original). Although the Fifth Circuit acknowledged the district court's "talismanic recitation" regarding the abuse of discretion standard was correctly recited, the district court's own opinion demonstrated that "in actuality" the court had "shifted the burden of proof from Hilton to the plan administrator" and had applied the clear error standard of review to the plan administrator's determination rather than the substantially more deferential abuse of discretion standard. *Id.* at *6. According to the Fifth Circuit,

> [o]ur synopsis of the facts found by the district court and present in the record reflects a cavalier attitude and lackadaisical effort on Hilton's part regarding the submission of probative evidence sufficient to support a determination that despite his education, training, and experience, he could not perform *any* job or be re-trained to do so. Indeed, the slight evidence before the plan administrator at the time the decision was made had been assembled thanks to the efforts of the claims administrator and her

persistence in badgering physicians and the compensation carrier for additional information. Even with the luxury of two extensions of 30 days, neither Hilton nor his counsel produced positive evidence of the kind needed to meet the test of disability under the Plan.

*Id.* (emphasis in original). The claimant essentially presented no evidence in support of his claim.

*Id.* at *8.

Unlike in *Hilton*, Plaintiff presented significant evidence in support of her claim. As previously noted, the Agreed Administrative Record comprises 2,266 pages. The Court finds Defendant's arguments regarding outdated records and about the burden of proof without merit.

> ### *Whether the R&R errs in applying the treating physician rule and giving deference to Plaintiff's treating physicians over independent reviewing physicians and whether the R&R improperly relies on caselaw from outside the Fifth Circuit*

The next sub-argument raised by Defendant in support of its first main objection is the R&R errs by applying the treating physician rule applicable in Social Security cases and giving deference to Plaintiff's treating physicians over independent reviewing physicians.[9] In its consideration of this sub-argument, the Court will also consider Defendant's second main objection to the R&R, that the Magistrate Judge relied on law outside this circuit "that is contrary to the way the Fifth Circuit will decide these issues." Dkt. # 37 at 20-22. As a general matter, Defendant asserts the R&R erred in using Ninth Circuit law and in specifically relying on *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp.3d 1068 (W.D. Wash. 2018), a district court order within the Ninth Circuit "that no party here cited in their briefs or oral argument" and that the Magistrate Judge did not present to the parties

---

[9] In her response, Plaintiff states under Social Security's "treating physician rule" a medical opinion from a treating source is given more weight than that of a non-treating source, and if the opinion is also supported by medically acceptable clinical and laboratory evidence, it is given controlling weight. *See* Dkt. # 38 at 14, n. 33 (citing 20 CFR § 404.1527(c)). According to Plaintiff, this rule was withdrawn in 2017. Dkt. # 38 at 14, n. 33

prior to the issuance of the R&R.[10]  Dkt. # 37 at 21.

Specifically in the context of its sub-argument regarding the so-called treating physician rule, Defendant also objects to the R&R's reliance on *Reetz*, *see id.* at 2-5 & 21, asserting the *Reetz* court improperly relied on the treating physician rule.[11] According to Defendant, nothing about *de novo* review changes that ERISA does not require plan administrators to accord special deference to opinions of treating physicians.  Dkt. # 37 at 3 (citing *Ariana M. II*, 2018 WL 4384162, at *16 (recognizing on *de novo* review that "[p]recedent forecloses th[e] argument" that treating physicians' opinions are owed greater deference than the reviewing physicians)).

As an initial matter, it is not improper for the Magistrate Judge to rely on the reasoning of an opinion neither party cites in its briefing. The Magistrate Judge found *Reetz*, a case involving Defendant, similar to the facts in this case and persuasive.[12] Contrary to Defendant's assertion, both the R&R, and the *Reetz* case on which it relies, specifically rejected the application of Social Security's treating physician rule.  *See* Dkt. # 37 at 50-51; *see also Reetz*, 294 F. Supp.3d at 1083. In her discussion of the *Reetz* case, the Magistrate Judge stated there is no treating physician

---

[10] The Magistrate Judge was under no such obligation. The Court would further note Defendant was a party in the *Reetz* case, undercutting any suggestion Defendant might make that it was unaware of the *Reetz* decision.

[11] Defendant further argues the court in *Reetz* shifted the burden to the administrator based on prior records and prior payments, and this is contrary to the way the Fifth circuit views these issues and the burden of proof in disability cases. *See* Dkt. # 37 at 21-22 (citing *Hilton v. Asland Oil Inc.*, 103 F.3d 124 (5th Cir. 1996) (unpublished); *cf. Corry v. Liberty Life Assur. Co. of Boston*, 499 F.3d 389 (5th Cir. 2007) (reversed and rendered for insurer on abuse of discretion standard where administrator paid benefits for five years where claimant continued to seek medical treatment and her treater stated she would be unable to return to any type of "gainful employment")). As stated above, however, *Hilton* is distinguishable. The Court addresses *Corry* in detail below.

[12] In *Reetz*, Hartford asserted, as in this case, the plaintiff medically improved prior to its denial.  The court reviewed the evidence under a *de novo* standard and disagreed.

preference in the ERISA context. *Id*. (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). However, as stated by the court in *Reetz*, the Magistrate Judge noted "this does not mean that a district court, engaging in a *de novo* review, cannot evaluate and give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative." Dkt. # 33 at 51 (citing *Reetz*, 294 F. Supp. 3d at 1083 (quoting *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 442 (2d Cir. 2006))).

Because Defendant asserts in its objections that the R&R's recommended findings of fact and conclusions of law regarding Plaintiff's treating physicians are the "lynchpin of the Magistrate Judge's recommendation" that Plaintiff meets the Policy definition of "disability," the Court takes a close look at the law regarding the weight to be given treating physicians in the ERISA context. Defendant argues nothing about *de novo* review changes precedent "which states that in an ERISA case, the court is not to apply the treating physician rule applicable in Social Security cases, where the opinion of a treating physician is entitled to more weight than that of non-treaters." Dkt. # 37 at 2-3. According to Defendant's interpretation of current law, the Court must "look at this in the same way that the administrator is required to look at the evidence in the AR, which provides no deference to the treating physician." *Id*. at 4. Stated differently, Defendant asserts "the case law is contrary to the R&R's finding that it *can* give more weight to a treating physician's conclusions in *de novo* review." *Id.* (emphasis added).

The Supreme Court, in *Black & Decker Disability Plan v. Nord*, held that in ERISA cases, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's

evaluation." 538 U.S. 822, 834 (2003). Therefore, as urged by Defendant and specifically stated by the Magistrate Judge, Defendant was not required to give more weight to the opinions of Plaintiff's treating physicians than the two physicians it hired to review the file.[13]

To say "courts have no warrant to require plan administrators automatically to accord special weight to the opinions of a claimant's physician" does not mean that an administrator is prohibited from providing any "deference to the treating physician" or, more importantly, that a court cannot give appropriate "weight to a treating physician's conclusions in *de novo* review," as advocated by Defendant. *See* Dkt. # 37 at 4; *see also Black & Decker*, 538 U.S. at 834. In *Paese*, the Second Circuit Court of Appeals explained as follows:

> As for the specific issue of whether the district court gave undue weight to the conclusions of Paese's treating physicians, . . . the Supreme Court has explicitly stated that, unlike the SSA, ERISA Plan administrators need not give special deference to a claimant's treating physician. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ('[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.'). However, the Court in *Black & Decker* also observed that ERISA Plan administrators 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.' *Id.* Accordingly, while *Black & Decker* holds that no special deference is required, this does not mean that a district court, engaging in a *de novo* review, cannot evaluate and

---

[13] However, as further noted by the Magistrate Judge, the Supreme Court also stated a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence. . . ." Dkt. # 33 at 51, n. 25 (citing *Black & Decker*, 538 U.S. at 834). For example, a plan administrator may abuse its discretion when it ignores or misstates the results of a physician's evaluation of the claimant's functional capacity. *See Alexander v. Hartford Life & Acc. Ins. Co.*, 347 Fed.Appx. 123, 125–26 (5th Cir. 2009) (per curiam). An administrator's failure to provide a peer reviewer with all relevant medical records may also support a finding that the administrator abused its discretion. *Davis v. Aetna Life Ins. Co.*, No. 3:15-CV-01654-N, 2016 WL 9448704, at *4 (N.D. Tex. May 26, 2016), *aff'd*, 699 Fed. Appx. 287 (5th Cir. 2017) (citing *Franklin v. AT & T Corp.*, 2010 WL 669762, at *6 (N.D. Tex. 2010)).

give appropriate weight to a treating physician's conclusions, if it finds these opinions reliable and probative. This is precisely what happened here.

449 F.3d at 442.

Defendant's arguments about the Magistrate Judge's evaluation of the treating physicians' opinions as well as the opinions of the physicians relied upon by Defendant, fail to sufficiently account for the differences in the two standards of review. "In this case, as in many similar ERISA cases, selecting the standard of review is much more than a mere technicality." *Turner v. Ret. & Ben. Plans Comm. Robert Bosch Corp.*, 585 F. Supp. 2d 692, 696 (D.S.C. 2007). Again, the *de novo* standard of review allows the court to examine all of the evidence in the record and decide whether or not the plaintiff in a case is totally disabled without giving any deference to the plan administrator's decision to deny or terminate disability benefits.[14] *Id.* (citing *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1025 (4th Cir.1993)).

As previously stated, in a trial on the administrative record under a *de novo* review standard, the court "can evaluate the persuasiveness of the conflicting testimony and decide which is more likely true." *Kearney*, 175 F.3d at 1095. The court's evaluation of the evidence "'necessarily entails making reasonable inferences where appropriate.'" *Oldoerp*, 12 F. Supp. 3d at 1251 (quoted source omitted). And, as held by the Second Circuit Court of Appeals, the court may give appropriate weight to the conclusions of a physician upon finding the physician's opinions reliable and probative. *Paese*, 449 F.3d at 442. This does not run afoul of the Supreme Court's decision in *Black & Decker*.

---

[14] Under the abuse of discretion standard, on the other hand, the plan administrator's "decision will not be disturbed if it is reasonable, even if this court would have come to a different conclusion independently." *Turner*, 585 F. Supp. 2d at 696 (quoting *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 232 (4th Cir.1997)).

Nor does it run afoul of Fifth Circuit precedent.

The *Turner* court's *de novo* review of the evidence is similar to that of the Magistrate Judge here. There, the court found the weight of all the evidence in the record indicated the plaintiff was, in fact, totally disabled. 585 F. Supp. 2d at 707. After discussing *Black & Decker*, the court stated as follows:

> It was certainly not erroneous, therefore, for MetLife to refuse to give more weight to the opinions of Plaintiff's treating physicians than the three physicians it hired to review the file.
>
> However, the undeniably conspicuous fact is that, according to the record, the physicians who have treated the Plaintiff conclude that she is totally disabled and unable to pursue gainful employment. The only physicians who have concluded that Plaintiff is in fact not disabled and able to work are the three doctors hired by MetLife, who based their assessment on the Plaintiff's medical records. The court certainly has no medical expertise, and in no way questions the competency or objectivity of the physicians retained by MetLife, but it is simple common sense that there is information that a doctor may receive from hands-on treatment and interpersonal interaction with a patient that simply cannot be transmitted on a piece of paper. This proposition is amply supported by case law. *See, e.g., Oliver v. Coca Cola Co.,* 497 F.3d 1181, 1196–97 (11th Cir.2007) (holding that there was no 'reasonable basis' for terminating benefits based solely on having file reviewed by physician where plaintiff had submitted voluminous medical evidence of disability based on years of visits with treating physicians); *Evans v. UnumProvident Corp.,* 434 F.3d 866, 877 (6th Cir.2006) (giving more weight to medical opinions based on physical examinations than opinions based solely upon file review).
>
> For this reason, the court finds the opinions of the physicians who believe Plaintiff to be totally disabled to be more persuasive than the physicians whose opinions were relied upon by MetLife.

*Id.* In the interests of clarity, the court emphasized it did not find these physicians more persuasive simply because they were the plaintiff's treating physicians. *Id*. at n. 9. Instead, the court found their opinions more persuasive "for the simple fact that they have more information upon which to base such opinions than physicians who only have the benefit of a written record." *Id.*

Similar to the *Turner* court, and the court in *Reetz*, the Magistrate Judge stated the treating

physicians' relationships with Plaintiff allowed them to personally observe the effects of Plaintiff's diagnoses and assess the credibility of her reports of pain. Dkt. # 33 at 51. As one example, the Magistrate Judge stated Dr. Gajraj, Plaintiff's pain management treating physician for over five years, opined in 2017 that Plaintiff suffers from chronic pain, secondary to lumbar degenerative disc disease/radiculopathy, and is disabled.[15] AR 14. In contrast, the Magistrate Judge noted Dr. Lewis, because he did not personally examine Plaintiff, could not have observed the effect of Plaintiff's chronic pain or assessed her credibility. And, as will be discussed in further detail below, the Magistrate Judge also specifically addressed the aspects of Dr. Lewis' report she found troubling.

As in *Reetz*, the Magistrate Judge found the treating physicians' medical opinions to be more reliable and probative of Plaintiff's condition than Dr. Lewis' report. Dkt. # 33 at 51 (citing *Reetz*,

---

[15] In its reply to Plaintiff's response to its objections, Defendant asserts nowhere in the R&R is there an analysis of the "contradictions between Plaintiff's current pain management doctor, Dr. Gajraj's June 6, 2017 opinion letter and his medical records. Instead the R&R just accepts Dr. Gajraj's ipse dixit in his opinion letter." Dkt. # 40 at 2.

However, the Magistrate Judge specifically addressed Defendant's argument that more recent medical records from Dr. Gajraj from 2015 to 2017 showed Plaintiff's medication regimen was working. Dkt. # 33 at 43. However, the Magistrate Judge did not find Dr. Gajraj's comments that Plaintiff was "gaining benefit in terms of analgesia and increased function" under her medication regime as compelling as Defendant does. *Id.* She specifically noted that despite the medications she was taking, Plaintiff was still experiencing pain, pointing out that in each record relied upon by Defendant Dr. Gajraj noted Plaintiff's chief complaint was right low back pain and right leg pain. *Id.* (citing AR 9-13, AR 1740-49). The Magistrate Judge further noted Dr. Gajraj performed a Sudoscan procedure on May 14, 2015 to detect peripheral neuropathy (damage to the peripheral nerves). Dkt. # 33 at 44 (citing AR 1747-48). The Magistrate Judge found it noteworthy the objective test found possible early signs of peripheral neuropathy. *Id.*

She also noted more recent records from Plaintiff's treating primary care doctor, Purvi Sanghvi, M.D., from October and December 2016 reveal Plaintiff's chronic pain condition remained unchanged. Dkt. # 33 at 44. Specifically, at the October 2016 visit to establish care with Dr. Sanghvi, Plaintiff admitted low back pain, and Dr. Sanghvi assessed Plaintiff with chronic pain syndrome. *Id.* (citing AR 6-7). Notably, in Dr. Sanghvi's notes from the December 6, 2016 visit (which was approximately one week before Defendant's denial of LTD benefits), Dr. Sanghvi noted on examination Plaintiff's back was "tender to palpation over lumbar-sacral spine." *Id.* (citing AR 2).

294 F. Supp. 3d at 1083 (citing *Oldoerp*, 12 F. Supp. 3d at 1250 ("[W]hen an in-person medical examination credibly contradicts a paper-only review conducted by a professional who has never examined the claimant, the in-person review may render more credible conclusions."))). In the absence of specific guidance from the Fifth Circuit to the contrary, the Court does not find the Magistrate Judge's evaluation of the evidence, or her conclusions, in error.[16]

Under a *de novo* review, the court may evaluate the opinions of the treating providers according to multiple factors. *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 289 (E.D.N.Y. 2014) (stating that "[a]lthough one factor could be whether the particular functional measurements cited by defendants' reviewers support plaintiff's disability claim, the Court need not follow defendants' reviewers in making those measurements (and how current they are) the primary basis of its decision"). According to the court in *Barbu*, the court may consider a range of evidence, to

---

[16] Although the Magistrate Judge did not specifically address a couple of cases relied upon by Defendant in its cross motion for judgment on the record, presumably it was because she did not find them helpful in her *de novo* review of the facts involved here. For example, in *Hans v. Unum Life Ins. Co.*, No. CV 14-02760-AB (MRWx), 2015 WL 5838462 (C.D. Cal. Oct. 5, 2015), a case relied upon by Defendant, the court stated that although "Unum's medical examiners ultimately contradicted Plaintiff's treating physicians and Plaintiff's other medical support, Unum had every right to rely on and give substantial weight to such opinions in making its final decision." *Id.* at *13.

In *Hans*, the plaintiff's medical condition was chronic fatigue syndrome ("CFS"), "a subject of discussion and debate within" the Central District of California. *Id*. at *10. It was the court's understanding that CFS tended to either progress or regress over time; thus, the court was "very mindful of the demarcation between suffering from CFS and CFS rendering one disabled." *Id.* The parties agreed the plaintiff was entitled to receive benefits from May 2007 to May 2012 due to the symptoms associated with CFS; the dispute arose from Unum's termination of those benefits. *Id*. Unum argued it relied on a significant improvement in the plaintiff's condition in justifying termination, and the plaintiff argued significant improvement was absent from her updated medical records. *Id.*

After conducting a *de novo* review of the evidence, the court found the plaintiff had significantly improved from when he was first diagnosed with CFS, noting the "ongoing CFS symptoms" were no longer present and several physicians had concluded the plaintiff no longer had CFS. *Id.* at *11-*12.

include objective testing and subjective reports of symptoms. 35 F. Supp. 3d at 289 (citing *Connors v. Connecticut General Life Ins. Co.,* 272 F.3d 127, 136 (2d Cir. 2001) ("It has long been the law of this Circuit that the subjective element of pain is an important factor to be considered in determining disability.") (internal quotation marks and citations omitted))). As the Supreme Court has instructed, "when judges review the lawfulness of benefit denials, they will often take account of several different considerations . . . determin[ing] lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together." *Barbu,* 35 F. Supp. 3d at 289 (quoting *Metro. Life. Ins. Co. v. Glenn,* 554 U.S. 105, 117 (2008)).

Here, the Magistrate Judge took into account several different considerations – the opinions of Plaintiff's treating physicians and Defendant's independent reviewing physicians, Dr. Sklar and Dr. Lewis, as well as Plaintiff's subjective elements of pain – and reached a result in Plaintiff's favor by weighing all together. The Court finds without merit Defendant's objections regarding the "treating physician rule" and the weight the Magistrate Judge gave to Plaintiff's treating physicians' opinions. The Court also overrules Defendant's objection that the Magistrate Judge erred in relying on law outside this circuit.

The Court now considers whether the Magistrate Judge erred in her consideration of the opinions of Dr. Sklar and Dr. Lewis. In its reply to Plaintiff's response to its objections, Defendant asserts the "R&R picks at Dr. Lewis's and Dr. Sklar's opinions but fails to acknowledge that these independent reviewing physicians grappled with Plaintiff's functionality, which is the standard under the [Policy]," and fails to properly credit these physicians "for accounting for and reconciling all the evidence in the AR." Dkt. # 40 at 3.

The R&R devoted five pages of analysis to explaining why she deemed Dr. Lewis' and Dr.

Sklar's opinions less reliable and thus accorded them less weight. Dkt. # 33 at 48-52. Relying on

Fifth Circuit law, the Magistrate Judge addressed why she gave Dr. Sklar's conclusions, which she

believed contradicted those of Plaintiff's treating physicians, minimal weight:

> The records reveal[] that since 2002, Plaintiff has consistently reported that she experienced pain. Rather than showing improvement of Plaintiff's condition, Dr. Skylar's IME Report supports Plaintiff's position. On physical examination, Dr. Sklar noted Plaintiff walked with a forward flexed posture holding her back, and she had decreased sensation in the bilateral lower extremities especially in the S1 distribution. He also noted '[s]traight leg raising to 90 degrees in the seated position cause[d] complaints of back pain.' AR 1529. There was also moderate tenderness to palpation over the lumbosacral junction and bilateral gluteals and left lateral thigh/greater trochanter region. Dr. Sklar stated the physical examination was consistent with the diagnosis of chronic unspecified lower back pain. However, according to Dr. Skylar, there was no 'clear evidence of any persistent radiculopathy and records [were] not consistent with the diagnosis of chronic radiculopathy either.' AR 1529. Dr. Skylar acknowledged Plaintiff has pain but did not believe pain could or should preclude a claimant from working.
>
> However, pain can either prevent or make difficult the tasks required by an occupation. *See Audino v. Raytheon Co. Short Term Disability Plan,* 129 Fed. Appx. 882, 885 (5th Cir.2005) ('We are also troubled by MetLife's failure to accord weight to Audino's consistent complaints of pain, even though those complaints were documented in her medical records for years before she sought benefits and there is no indication that she overstated her pain once she decided to seek benefits.'); *see also Schexnayder v. CF Indus. Long Term Disability Plan for its Employees*, 553 F. Supp. 2d 658, 666-67 (M.D. La. 2008), *aff'd in part, rev'd in part sub nom. Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465 (5th Cir. 2010) ('Although pain cannot always be objectively quantified, Mr. Shexnayder's pain is corroborated by medical evidence finding degenerative disc disease and spinal stenosis and notations of pain in the results of the FCE. The Defendant abused its discretion in discounting the subjective evidence of Plaintiff's pain and the objective evidence corroborating the disability.').

Dkt. # 33 at 49-50.

In *Audino*, relied upon by the Magistrate Judge, the Fifth Circuit found an abuse of discretion

because the plan administrator ignored the claimant's consistent complaints of pain as subjective,

"either minimized or ignored objective evidence of disability corroborating those complaints, and

concluded that the evidence did not show an inability to do her job functions without analyzing the effect that her conditions would have on her ability to perform her specific job requirements." 129 Fed. Appx. at 885. In that case, the claimant presented specific evidence of misstatements and oversights by the reviewing physicians that the plan administrator relied upon in denying the claim. *Id.* at 884-85 (noting that one physician misstated objective test results, while another mentioned exam results in a summary of evidence but failed to discuss those results in analysis of whether claimant was disabled).

According to Defendant's objections, the *Audino* case is distinguishable because there, in determining whether the claimant could meet an own occupation definition for short term disability benefits, the employer provided a list of the tasks the claimant would be required to do in her specific job, and the defendant did not analyze the effect of her medical condition on those specific tasks. *See* Dkt. # 37 at 14, n. 10. Defendant asserts it did that analysis with the EAR and EAR addendums.[17] Defendant argues Plaintiff has presented no evidence in the AR to contradict the final EAR and its analysis of whether she can meet the requirements of the Policy's "any occupation" standard. *Id.*

However, as set forth by the Magistrate Judge, there is evidence in the AR that contradicts

_____

[17] Defendant's first EAR, which was the only new EAR available to Defendant at the time of its initial denial, determined there were no jobs Plaintiff could perform that would pay a gainful wage under the Policy criteria. *See* Dkt. # 33 at 53 (citing AR 1926-27). On December 8, 2016, Defendant updated the first EAR using Dr. Sklar's restrictions and limitations in the IME Report. *See* Dkt. # 33 at 53 (citing AR 1508-09). Unlike the first EAR, the First EAR Addendum identified several occupations Plaintiff was well-suited for based on her education, training, and work history, and which met the earnings requirement in the Policy. AR 1508-09. In her motion for judgment on the record, Plaintiff argued the First EAR Addendum disregarded the functional limitations by Plaintiff's treating doctors, the impact of her chronic pain, and the documented cognitive decline caused by her narcotic medications. *See* Dkt. # 33 at 53 (citing Dkt. # 17 at 11).

the final EAR (*i.e.* records from Plaintiff's treating physicians and evidence regarding Plaintiff's chronic pain and the effects of her pain medication). Additionally, similar to the Fifth Circuit in *Audino*, the Magistrate Judge found deficiencies in the opinions of the medical consultants. According to the Magistrate Judge, the First EAR Addendum relied upon Dr. Sklar's IME Report. Thus, the Magistrate Judge concluded the First EAR Addendum may not have accurately returned jobs that could be performed by Plaintiff.[18] Dkt. # 33 at 54 (quoting *Reetz*, 294 F. Supp. 3d at 1085) ("In short, the [C]ourt finds that the search did not accurately reflect [Plaintiff's] limitations, and thus, the [C]ourt is not convinced that the jobs returned by the search are ones that [Plaintiff] can perform.").

In asserting the R&R errs in not giving deference to its independent reviewing physicians, Defendant relies on *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 515 (5th Cir. 2010), wherein the Fifth Circuit stated the fact the "independent experts reviewed Anderson's records but did not examine him personally also does not invalidate or call into question their conclusions." *See* Dkt. # 37 at 21. The fact that Dr. Lewis did not examine Plaintiff in person was not what called into question his conclusions. Rather, the mistakes contained in Dr. Lewis' report called into question

---

[18] In addition to being able to perform the essential duties (including working the number of hours in a regularly scheduled workweek) of any occupation, there is a separate requirement that Plaintiff be able to earn an amount equal to the product of her Indexed Pre-disability Earnings and her Benefit Percentage. In this case, that amounts to at least $4,171.55 per month. Dkt. # 33 at 36, n. 19 (citing Dkt. # 28 at 2-3) (citing AR 869)). In her response to Defendant's cross motion for judgment on the record, Plaintiff argued there is no evidence from each Dr. Sklar or Dr. Lewis to suggest Plaintiff would be capable of returning to the types of high-level work that would pay her at least $4,171.55 per month. Dkt. # 28 at 3. Without addressing what evidence there is in the AR that Plaintiff could also meet the earnings requirement, Defendant argued in its reply that Dr. Sklar's role was not to opine as to whether Plaintiff could work at the type of job that would pay over $4,171.55 per month and he is not a professional qualified to offer vocational assessments. Dkt. # 29 at 5.

the reliability of his conclusions.

The Magistrate Judge noted two times in his report Dr. Lewis stated Plaintiff's L4-L5 and L5-S1 surgery was performed in 2012, rather than 2002. *Id*. at 52 (citing AR 1343, 1348). In both instances, Dr. Lewis stated Plaintiff "previously" underwent surgery on L3-4 on March 25, 2008. According to the Magistrate Judge, this belies Defendant's argument that Dr. Lewis' report had a "typographical error on [the] surgery date being 2012." Dkt. # 33 at 52 (quoting Dkt. # 26 at 27). The Magistrate Judge noted other errors as well. For example, Dr. Lewis states Plaintiff continued to utilize the spinal cord stimulator, but the record reveals the stimulator was surgically removed in 2012 because it caused an increase in Plaintiff's symptoms. Dkt. # 33 at 52 (citing AR 1343). Ultimately, the Magistrate Judge gave little weight to Dr. Lewis' opinion.

The Court finds Defendant's objections regarding the Magistrate Judge's treatment of the independent medical reviewers' opinions without merit.

### *Whether the R&R wrongly relies on Plaintiff's subjective complaints as opposed to objective evidence*

In its next sub-argument, Defendant asserts the R&R erroneously relies on Plaintiff's subjective complaints as opposed to objective evidence. According to Defendant, the R&R faults Defendant for not factoring in her cognition even though it considered all of the medical and other evidence, including Plaintiff's lengthy and detailed letters and questionnaires which it asserts undermine her complaints of cognitive impairment. Dkt. # 37 at 12. Defendant argues Dr. Sklar and Dr. Lewis considered Plaintiff's subjective complaints of pain and the effects of her medications and concluded the objective medical evidence was more probative, "something that the Fifth circuit has previously acknowledged is appropriate for an administrator." *Id*. at 13 (citing *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 400-03 (5th Cir. 2007)).

In her response, Plaintiff argues Defendant cannot credibly argue she does not suffer from chronic pain, pointing out Defendant's own IME physician, Dr. Sklar, stated the "claimant has pain" and also that "pain is clearly not a reason not to work." Dkt. # 38 at 6. Plaintiff further asserts as follows:

> Hartford cannot credibly argue that the record does not contain extensive, objective evidence supporting Pike's subjective complaints. The R&R references Pike's diagnostic lumbar discogram10, MRI demonstrating instability at L3-4, extreme interbody fusion at L3-4, CT scan, x-ray, MRI, and nerve conduction study, failed surgical spinal stimulator, and Sudoscan. The R&R weaves its consideration of these objective tests with the opinions and conclusions of multiple treating physicians over the course of many years.

> In truth, Hartford's 'objection' is nothing more than its complaint that the R&R did not improperly defer to its claim determination. . . . Hartford forgets that in a *de novo* review, 'What happened before the Plan administrator or ERISA fiduciary is irrelevant.' . . . The fact that Hartford's conclusion on the evidence at the claim stage differed from that of the Magistrate at trial does not make the Magistrate's conclusion erroneous.

*Id.* (citations omitted).

In its objections and reply, Defendant relies on two Fifth Circuit cases in which the Fifth Circuit held the administrator did not abuse its discretion by failing to give adequate weight to the claimant's complaints of pain. *See* Dkt. # 37 at 13 (citing *Corry*); *see also* Dkt. # 40 at 3 (citing *McDonald v. Hartford Life Grp. Ins. Co.*, 361 Fed. Appx. 599 (5th Cir. 2010)).[19] In *McDonald*, the

_____

[19] The Court notes Defendant does not cite *McDonald* in its discussion of Plaintiff's subjective pain. Rather, Defendant asserts the Magistrate Judge, by adopting the opinions of Plaintiff's treating physicians and ignoring more recent and contradictory evidence in the AR, found in "direct contravention of precedent" that "has explicitly disapproved of . . . in the ERISA context . . . 'accord[ing] special deference to the opinions of treating physicians.'" Dkt. # 40 at 3 (citing *McDonald*, 361 Fed. Appx. at 610-11 (quoting *Black & Decker*, 538 U.S. at 833-34). As explained above, however, although administrators are not obliged to accord special deference to the opinions of treating physicians and do not bear a heightened burden of explanation when they reject a treating physician's opinion, *see Black & Decker*, 538 U.S. at 825, 830, that does not mean the Court, engaging in a *de novo* review, cannot evaluate and give appropriate weight to a treating physician's

Fifth Circuit discussed both *Audino* (discussed above) and *Corry* in detail. 361 Fed. Appx. at 612. Importantly, all three cases involved the abuse of discretion standard of review, which considers whether the administrator acted arbitrarily or capriciously.[20]

In *Corry*, the Fifth Circuit addressed in detail whether an administrator's review adequately considered a claimant's subjective complaints of pain. *McDonald*, 361 Fed. Appx. at 612 (citing *Corry*, 499 F.3d at 399-401). There, the claimant's experts opined she was disabled due to fibromyalgia, a diagnosis reached by reliance on the claimant's subjective reports of pain. *McDonald*, 361 Fed. Appx. at 612 (citing *Corry*, 499 F.3d at 401). The plan administrator rejected the claimant's assertion that she was disabled, relying on the opinions of three outside reviewing physicians. *Id.* "All three reviewing physicians discussed the claimant's subjective complaints and her previous diagnosis of fibromyalgia in their analyses; yet they each ultimately concluded that no medical evidence existed establishing a disability." *Id.* On appeal, the Fifth Circuit concluded that this constituted a "battle of the experts," where the administrator was "vested with discretion to choose one side over the other." *Id.* Therefore, the court rejected the argument that the administrator "fail[ed] to consider and give proper weight to relevant evidence" of subjective pain. *Id.*

In *McDonald*, the Fifth Circuit held Hartford and its reviewing physicians clearly "considered, evaluated, and addressed" the claimant's subjective complaints of pain "but ultimately concluded that these subjective complaints were insufficient to support a finding of disability." 361 Fed. Appx. at 612-13. According to the Fifth Circuit in *McDonald*, any "difference of opinion

_____

conclusions if it finds the opinions reliable. *See* Dkt. # 33 at 50-51.

[20] A decision is arbitrary if there is no rational connection between the known facts and the decision or between the found facts and the evidence. *Audino*, 129 Fed. Appx. at 883 (citing *Dowden v. Blue Cross & Blue Shield of Tex., Inc.,* 126 F.3d 641, 644 (5th Cir.1997) (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield,* 97 F.3d 822, 828 (5th Cir.1996))).

between the reviewing and treating physicians on the interpretation of [the claimant's] MRIs falls into Hartford's area of discretion; McDonald [did] not point to any affirmative misstatements of objective test results of the kind presented in *Audino*." *Id.* at 613. The court emphasized Hartford had "discretion in this battle of experts, and in the absence of evidence that Hartford failed to consider McDonald's complaints of pain, Hartford was within its discretion to accept the opinions of its three qualified medical experts." *Id.* The court concluded Hartford's decision was neither arbitrary nor capricious on this point.

A review of the *McDonald* case again brings the issue of the standard of review into focus. Unlike the abuse of discretion standard applied in *McDonald*, and in *Audino* and *Corry* cited therein, here the Magistrate Judge and this Court apply a *de novo* review. In independently weighing the evidence, the Magistrate Judge gave minimal weight to Dr. Sklar's opinions, explaining in detail the reasons why. *See* Dkt. # 33 at 48-50. She also found troubling certain aspects of the report of Dr. Lewis, and thus gave it minimal weight. *Id.* at 51. The Court finds the Magistrate Judge did not improperly consider subjective complaints over objective evidence. This objection is overruled.

### *Whether the R&R erroneously uses Plaintiff's attorney's arguments in briefing as findings*

In its next sub-argument, Defendant asserts the R&R erroneously uses Plaintiff's attorney's arguments in briefing as findings. Specifically, Defendant criticizes the Magistrate Judge's discussion of whether the errors contained in Dr. Lewis' report, which Defendant characterized as merely typographical, changed the conclusions in the report. In her discussion, the Magistrate Judge noted Plaintiff's argument as to why the errors are important: "According to Plaintiff, it is important that Plaintiff's L4-S1 surgery predates her L3-4 surgery because 'that suggests that she is suffering from Transitional Syndrome, where the prior fusion causes increased stress on adjacent levels' and

also implies 'possible further deterioration in the future.'" Dkt. # 33 at 52 (quoting Dkt. # 17 at 27). Defendant argues the Magistrate Judge never identifies any impact in the AR that "typographical errors" have on Dr. Lewis' conclusions.  Dkt. # 37 at 17.

As noted above, the Magistrate Judge set forth several errors contained in Dr. Lewis' report that called into question the reliability of his conclusions. The errors were not just limited to what Defendant characterizes as "typographical." Specifically, Dr. Lewis believed Plaintiff's 2008 L3-4 surgery occurred prior to her 2002 L4-S1 surgery; Plaintiff's 2009 surgery was to remove hardware from the L3-4 surgery; Plaintiff continues to use the spinal cord stimulator and it provides some relief; Plaintiff underwent L4-S1 surgery in 2012, and improved post-operatively; Plaintiff reports no adverse medication side effects; and Defendant's surveillance shows physical activity inconsistent with Plaintiff's report.  The Court does not find the Magistrate Judge erroneously uses Plaintiff's attorney's arguments in briefing as findings or that any such findings lead to erroneous legal conclusions.

Defendant also criticizes the Magistrate Judge's brief discussion regarding the Social Security Administration's ("SSA") determination that Plaintiff remains disabled under its standards. *See* Dkt. # 33 at 54-55 (stating the SSA determination was also relevant to the Court's *de novo* review and further stating "[t]he SSA's determination that Plaintiff remains Totally Disabled under its standards, as of April 10, 2017, is further evidence [of Disability under the Plan]."). At the end of her discussion after considering the pertinent medical evidence, the Magistrate Judge noted that although not binding, the SSA determination was also relevant to her determination on *de novo* review.  *See* Dkt. # 33 at 54 (citing *Gellerman v. Jefferson Pilot Fin. Ins. Co.*, 376 F. Supp. 2d 724, 735 (S.D. Tex.2005) (noting that "no court has held that an SSA determination is completely irrelevant")).

In April 2009, Plaintiff reported she had been awarded social security disability benefits. Dkt. # 33 at 10, n. 10 (citing AR 959, 961, 1361, 2059). The AR contains a letter dated April 10, 2017. AR 1361. Although it states the SSA had previously sent Plaintiff a letter telling her it was going to review her disability case, it did not need to review the case after all and would not be contacting her doctor. *Id*. According to Defendant, the letter says nothing about Plaintiff remaining "Totally Disabled under the SSA's standards."

Defendant argues the "regulations make clear that the SSA might waive its disability review for a wide variety of reasons, including based on its capacity for case reviews, backlog of pending reviews, projected number of new applications, and projected staffing levels." Dkt. # 37 at 20. Defendant further argues the SSA award with a physical assessment and "current evaluation" dated March 13, 2009 (AR 752-759), has no relevancy to whether Plaintiff is disabled as of December 15, 2016. *Id.* at 21. According to Defendant, "by nature of the date, it is based on outdated records and involves a time period for which Hartford already paid benefits." *Id.*

In her response, Plaintiff argues the 2017 letter ended the continuing disability review, rather than waived it, as asserted by Defendant. Dkt. # 38 at 9. Plaintiff further argues the letter suggests the SSA "collected evidence from her, and then decided it was no longer necessary to review her claim." *Id*. at 10. According to Plaintiff, the reasonable inference from the AR is the SSA continued to consider Plaintiff to be disabled under its rules.

As one of the many considerations she considered in her *de novo* review, the Magistrate Judge simply noted it is also of some relevance to the inquiry that the SSA judged Plaintiff to be disabled and awarded her disability benefits in 2009. Defendant does not dispute Plaintiff continues to receive social security disability benefits. The Court is not convinced the R&R erred in this regard

and thus overrules Defendant's objection.

### *Whether the R&R "cherry-picks" from the AR instead of reconciling the evidence*

Nor is the Court persuaded the R&R improperly "cherry picks" from the AR instead of reconciling the evidence, as Defendant argues in its last sub-argument. The Magistrate Judge explained in detail why she found some evidence more probative and some evidence less probative. This last objection is also overruled.

**Discussion of the third main objection**

At the end of the R&R, the Magistrate Judge considered whether pre-judgment interest, costs, and attorney's fees should be awarded as requested by Plaintiff in her Original Complaint. The Magistrate Judge found Plaintiff is entitled to receive LTD benefits from December 15, 2016, and to recover pre-judgment interest on those unpaid benefits. *Id.* at 56. She also found the circumstances support an award to Plaintiff for attorney's fees and costs, in addition to the benefits amount owed to her under the Policy. *Id.* at 59. Rather than specifically recommend an award of fees and costs, the Magistrate Judge recommended that Plaintiff be directed to file, within twenty days from the date of any Order adopting the R&R, a motion for pre-judgment interest, costs and attorney's fees. *Id.*

In its final objection, Defendant asserts any purported findings in support of the R&R's conclusions regarding attorney's fees and costs should not be adopted. According to Defendant, Plaintiff has not moved for or met her burden of showing entitlement to fees under 29 U.S.C. § 1132(g)(1). Should that occur, Defendant reserves its rights to challenge the motion, both on the

ability to recover fees and on the reasonableness of any recovery.[21]

The parties acknowledge the R&R anticipates further briefing on the issue. As acknowledged by Plaintiff in her response to Defendant's objections, the R&R specifies that any such award must be legally and factually supported and that Defendant is allowed to file a response. The Magistrate Judge specifically ordered Plaintiff's motion on attorney's fees shall include argument as to the authority upon which such fees may be granted. This Order clarifies the Court will consider *de novo*, following the parties' briefing, whether Plaintiff should be awarded pre-judgment interest, attorney's fees, and costs and if so, in what amounts.

## CONCLUSION

With the above clarification regarding the issue of pre-judgment interest, attorney's fees, and costs, the Court is of the opinion the recommended findings and conclusions of the Magistrate Judge are correct. Defendant's objections are without merit as discussed more fully herein. Accordingly, it is hereby

**ORDERED** that the objections of Defendant are **OVERRULED**. It is further

**ORDERED** that Plaintiff's Motion for Judgment on the Record (Dkt. # 17) is **GRANTED**, and Defendant Hartford Life and Accident Insurance Company's Cross-Motion for Judgment on the Record (Dkt. # 25) is **DENIED**. It is further

**ORDERED** that within twenty days from the date of entry of this Order, Plaintiff shall file a motion regarding pre-judgment interest, costs, and attorney's fees. The motion should be legally

---

[21] Defendant also lodges additional specific objections, including that the R&R purports to consider conflict of interest as a factor in this case involving *de novo* review. Dkt # 37 at 22. Defendant argues the distinction between a *de novo* and an abuse of discretion standard of review is "key" for the "conflicts of interest" issue. *Id*. at 23.

and factually supported and should address the appropriate rate to be prescribed in the event the Court finds Plaintiff is entitled to recover pre-judgment interest on the unpaid LTD benefits from December 15, 2016 as indicated in the R&R. The motion should also be supported by evidence reflecting the reasonable amount of costs and fees sought, and shall include argument as to the authority upon which such fees may be granted. It is further

**ORDERED** that Defendant shall file a response in accordance with the Local Rules, and Plaintiff may file a reply in accordance with the same. If it so desires, Defendant may file a surreply.

**IT IS SO ORDERED.**

**SIGNED this 27th day of March, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE